Filed May 13, 1896.

---

No. 1,939.

The Citizens' Street Railroad Co. *v.* Willoeby.

Pleading.—*Complaint.—Injuries to Adopted Child.*—A complaint for injuries to a boy described as an adopted son of the plaintiff, without showing anything further as to the facts of the adoption or his emancipation by his parents, is not sufficient to show any right of the plaintiff to recover for the loss of his services, under section 267, R. S. 1894 (section 266, R. S. 1881), providing that the father, or in case of his death, desertion, or imprisonment, the mother may maintain an action for the injury or death of her child.

PARENT AND CHILD.— *No Action by Mother at Common Law.— Damages.*—At common law a mother had no action for damages for the injury of her minor child.

From the Marion Superior Court.

*Mason & Latta,* for appellant.

*C. E. Averill* and *W. N. Pickerill,* for appellee.

Ross, J.—The appellee sued and recovered judgment against the appellant for the loss of services of a minor, whom she alleges was her adopted son, and who was injured by one of appellant's street cars.

The errors assigned on this appeal are:

"1.   The amended complaint does not state facts sufficient to constitute a cause of action.

"2.   The court erred in overruling the demurrer to the amended complaint.

"3.   The court erred in sustaining the plaintiff's motion for judgment in said cause.

"4.   The court erred in overruling the defendant's motion for a new trial in said cause."

The complaint, which is in one paragraph, reads as follows:

"Maria Willoeby, plaintiff, complains of the Citizens' Street Railroad Company, of Indianapolis, and, for her amended complaint herein, says that said defendant is a corporation, duly organized and existing under and by virtue of the laws of the State of Indiana, and that its exclusive business is that of a common carrier of passengers for hire in the city of Indianapolis, and territory contiguous thereto, and that said defendant was so carrying on its said business during the year 1888; that during the months of June and July, 1888, said defendant operated a line of street railway, and ran its cars upon a portion of North New Jersey street, in the city of Indianapolis, county of Marion, and State aforesaid; that the cars then and

there operated and run upon said street by said defendant, were drawn by mules driven and controlled by a servant and employe of said defendant; that on or about the — day of June, 1888, said defendant was running and operating one of its said cars on and upon said North New Jersey street, for the purpose of carrying passengers therein for hire, which said car was then and there in charge and under the control of a conductor, then and there a servant and agent of this defendant; that on or about said date, Joseph Willoeby, the adopted son of said plaintiff, then about thirteen (13) years of age, was upon said North New Jersey street, and between North and Michigan streets, and desired, and intended, to go south and to take passage upon, and ride in, one of the said defendant's cars as a passenger, to a point on said defendant's railway, distant from where he then and there was; that one of defendant's cars, going south upon said street, and in charge and under the control of a conductor, a servant and agent of defendant, came to where said Joseph Willoeby then and there was, he, said Joseph, stepped upon the rear step, or platform, of said car for the purpose of entering the same and being carried therein as a passenger, having the money with which to pay his fare, and being then and there ready and willing to do so; that as soon as said Joseph Willoeby had stepped upon the step of said car, as aforesaid, and before he, the said Joseph Willoeby, had time to enter said car, the conductor thereof, acting in the line of his duty and within the scope of his employment, without asking said Joseph Willoeby for his fare, or speaking to him, without cause and without any warning that he intended so to do, willfully, forcibly, and angrily took hold of and seized him, the said Joseph Willoeby, and with great force, willfully, wantonly,

maliciously, purposely and intentionally, threw said Joseph Willoeby from and off said car and upon the stone boulders with which the said street was then and there paved, while said car was running at great speed, with the intent, purposely and intentionally, to injure him, the said Joseph Willoeby; that by reason of being thrown from said car by said conductor, in the manner aforesaid, said Joseph Willoeby fell upon boulders, striking upon his left side, whereby he was bruised, wounded and mangled, his left hip badly bruised, and lacerated, and whereby he received internal injuries of such severity that he passed blood in consequence thereof; that by reason of the injuries so received by the said Joseph Willoeby, he became sick and debilitated, and as a direct result of being thrown from said car upon the stone pavement of said street, as above set forth, said Joseph Willoeby's left hip became diseased, the joint thereof destroyed, and his left limb shortened five (5) inches or more, and he was, and is, thereby rendered a cripple for life, and his spine has become curved and misshapen, and by reason of said injuries, so inflicted, as aforesaid, he has been rendered forever incapable of performing manual labor, or earning a support for himself or for this plaintiff; that by reason of the injuries so inflicted upon said Joseph Willoeby, as aforesaid, this plaintiff was compelled to expend, and did lay out and expend, large sums of money in caring for and nursing him, the said Joseph Willoeby, while sick and suffering by reason thereof, and was compelled to expend, and did lay out and expend, large sums of money for surgical and medical attendance, and will hereafter be compelled to further lay out and expend large sums of money for medical and surgical attendance, in relieving and attempting to cure him of the effects of said injuries; that by reason of the injuries so inflicted

upon said Joseph Willoeby, as aforesaid, the plaintiff has been deprived of the value of the services of said Joseph Willoeby, since the aforesaid date of said injuries, and will be deprived of his services and the value thereof until he, the said Joseph Willoeby, shall attain the age of twenty-one (21) years, all to her damage in the sum of five thousand dollars ($5,000.00), for which sum she demands judgment."

To the complaint, the appellant filed an answer of general denial; and, upon the issues thus joined, the cause was submitted for trial to a jury, and a general verdict returned in favor of appellee, assessing her damages at $500.00. With their general verdict the jury answered and returned a number of interrogatories submitted to them at the request of the appellant. The interrogatories submitted, with the answers of the jury thereto, are as follows:—

"1. Was Joseph Willoeby the son of the plaintiff, Maria Willoeby, at the time he was injured as alleged in this case?

"Ans.    No evidence to show.

"3. How long does the evidence show said Joseph Willoeby had lived as a member of plaintiff's family when injured?

"Ans.    No evidence to show.

"4. Does the evidence show whether said Joseph Willoeby's father is living or dead?

"Ans.    Does not.

"5. Does the evidence show whether said Joseph Willoeby's mother is living or dead?

"Ans.    No.

"6. Does the evidence show whether the plaintiff's husband is living or dead, and if so, which does it show?

"Ans.    No.

"7.   Does the evidence show what Joseph Willoeby was earning at the time of his injury?

"Ans.   $12.90 per month.

"8.   How long after his injury did he continue to earn the same wages?

"Ans. About three months.

"9.   What amount of wages was lost by Joseph Willoeby after he quit work in the fall of 1888, until he recovered from his attack of typhoid fever?

"Ans.   About $25.80.

"10.   What amount of wages was lost by Joseph Willoeby by reason of illness or inability to work, from the time he began to work for the Malleable Iron Company, in 1890?

"Ans.   $206.40.

"11.   What amount of money, if any, did plaintiff expend for medicines, made necessary for Joseph Willoeby by the injury complained of?

"Ans.   No evidence.

"12.   What amount of money has the plaintiff expended, if any, for medical services, made necessary by the injury to Joseph Willoeby, complained of in this case?

"Ans.   No evidence.

"13.   In what sum, if any, has the plaintiff become indebted to Doctor Waide for medical services, made necessary by the accident complained of herein?

"Ans.   $30.00.

"14.   For what sum, if any, has the plaintiff become indebted to Dr. Long for medical services rendered to Joseph Willoeby, by reason of the accident complained of?

"Ans.   None.

"15.   What sum, if anything, has the plaintiff expended for nursing Joseph Willoeby, made necessary by reason of the accident complained of?

"Ans.    None.

"16.    What is the pecuniary value, if anything, of the nursing given by the plaintiff personally to Joseph Willoeby, and made necessary by the accident herein complained of?

"Ans.    $70.00.

"17.    What is the pecuniary value, if anything, of the nursing given to Joseph Willoeby by the other members of plaintiff's family, and made necessary by the injury complained of?

"Ans.    None.

"18.    What amount in wages, if any, was lost by Joseph Willoeby, from the time he began work at the Malleable Iron Works until he quit that service by reason of his having been injured as alleged in this case?

"Ans.    None.

"19.    What amount of wages, if any, has Joseph Willoeby failed to receive since he quit the service of the Malleable Iron Works, up to the time of this trial, by reason of his having been injured as alleged in this case?

"Ans.    None.

"20.    What amount of wages, if anything, will Joseph Willoeby fail to receive, from the time of this trial until he is twenty-one (21) years of age, by reason of the injury complained of in this case?

"Ans.    $250.00.

"22.    Did the conductor of the street car, at the time he ejected Joseph Willoeby therefrom, intend to inflict upon him any injury?

"Ans.    Yes.

"23.    At the time Joseph Willoeby was ejected from defendant's car, was the situation such that injury was certain or unavoidable from such ejection, made in the manner in which it was made?

"Ans.  Yes.

"24.   What would have been the cost per week of maintaining Joseph Willoeby at plaintiff's home, during the time he was at the hospital?

"Ans.   $80.00."

At common law, the labor or service of an infant belongs to its father.  It owes reverence to its mother; but she has no legal authority over it and no legal right to its services.  The right to recover for the loss of such services, caused by the wrongful act of another, belongs to the father alone.  1 Shearwood Comt. 453.

"At common law, the father is entitled to the service of a minor during minority, because the burden of his support, maintenance, and education during that period is cast upon him.  The right and duty are correlative.  But the mother, upon whom no such legal duty rests, is not entitled to such services by virtue of the parental relation."  *Whitehead* v. *St. Louis, etc., R. W. Co.,* 22 Mo. App. 60.

Our statute, section 266, R. S. 1881 (section 267, Burns' Rev. 1894), provides that "A father (or in case of his death, or desertion of his family, or imprisonment, the mother) may maintain an action for the injury or death of a child, and a guardian for the injury or death of his ward.  But when the action is brought by the guardian for an injury to his ward, the damages shall inure to the benefit of his ward."

It is plain, therefore, under the statute above quoted, that a mother may, in case of the father's death, or desertion of his family, or imprisonment, maintain an action for the injury of her child, caused by the wrongful act of another.

The appellant contends, however, that inasmuch as the statute granting a right to the mother to sue and recover for the loss of services of a child, changes

the common-law, that it must be strictly construed and held to be no further abrogation of the common-law than the clear import of the language used in the statute absolutely requires.

There seems to be perfect harmony in the holding that the courts strictly construe a statute in derogation of the common-law, upon the assumption that no greater or other rights have been granted than such as the language used in the statute necessarily express, or is properly or necessarily inferable therefrom. *Hallman* v. *Bennett*, 44 Miss. 322; *Dean* v. *Metropolitan, etc., R. W. Co.*, 119 N. Y. 540; *Thompson* v. *Weller*, 85 Ill. 197; *Easterly's Appeal*, 54 Pa. St. 192; 23 Am. and Eng. Ency. of Law, pp. 386, 387, and cases cited in note 1.

In this case, the questions presented are these: First, do the facts alleged in the complaint, or in the answers to the interrogatories, show that the appellee "is *in loco parentis* to the boy, Joseph Willoeby;" and, second, if so, is she entitled to recover for the loss of his services? Counsel put the question thus: "Can a woman recover damages under an allegation that her adopted son has been injured, without alleging the ownership of his services, or the particulars of his adoption, or his emancipation by death, or otherwise, from the control of his natural parents?"

The common-law, giving no right of action to a mother for loss of services of her child, and the statute, giving no such right, except under certain circumstances, the question arises as to whether a right of action is shown, unless the contingencies are alleged which create the right, or whether it is sufficient merely to allege that he is her adopted son, and that, hence, the law assumes that she has a right to his services.

As heretofore stated, under the common-law, the

services of the child, until majority, belong to the father, and he alone could maintain an action for their loss, by the wrongful act of another; and our statute recognizes the common-law right of the father to such services, but provides that in case of his death, the desertion of his family, or his imprisonment, the mother may maintain an action therefor. The right, therefore, of the natural mother of an infant, to bring an action for an injury to it, depriving her of its services, depends upon either the death of the father, his desertion of his family, or his imprisonment. The statute makes the right of the mother to bring the action to depend upon one of these conditions, and it would seem that no cause of action is stated, unless the conditions which create her right have happened. In other words, unless she allege such facts as show that the contingency has arisen which gives her a right to sue, no cause of action is stated. If they are conditions precedent to a right to sue, the facts showing them must be alleged and proved, in order to authorize a recovery.

In the case of the *Louisville, etc., R. W. Co.* v. *Goodykoontz, Guard.,* 119 Ind. 111, the court, by Mitchell, J., in considering section 266, *supra,* of the statute, says:

"It was a settled rule of the common-law that no one could maintain a civil action for damages on account of the death of a human being. All claims for injuries to the person were extinguished by the death of the person injured. *Actio personalis moritur cum persona.* If a child was wrongfully injured, the father, or person lawfully entitled to the child's services, might recover for the loss of services during the period of disability up to the time of death, if death resulted. Incidental damages for nursing, surgical and medical attendance, including appro-

priate funeral expenses in case of death, were also recoverable by a parent.

"The statute above set out has added to the common-law remedy of a parent the right to recover all the probable pecuniary loss resulting from the death of a child. The right of action is primarily in the father, but contingently in the mother; and, whether there be a guardian or not, the father, or, under certain contingencies, the mother, may maintain an action under the above section."

In the case of *Louisville, etc., R. R. Co.* v. *Lohges,* 6 Ind. App. 288, this court held that it could not be assumed that because a mother brought an action for an injury to her child, she had brought herself within the terms of section 266, *supra.* Or, in other words, that the mere bringing of the action was not sufficient to entitle her to recover, unless she alleged and proved either the death of the father, his desertion of his family, or his imprisonment.

The only allegation of fact in the complaint, tending to show any right in the appellee to the services of the injured minor, are, "That on or about the said date, Joseph Willoeby, the adopted son of said plaintiff, then about thirteen years of age, was upon said North New Jersey street, between North and Michigan streets, and desired to go south and to take passage and ride in one of said defendant's cars as a passenger, to a point on said defendant's railway, distant from where he then and there was; * * * that by reason of the injuries so received by the said Joseph Willoeby, * * * he has been rendered forever incapable of performing manual labor, or earning a support for himself or for this plaintiff; that by reason of the injuries so inflicted upon said Joseph Willoeby, as aforesaid, this plaintiff was compelled to expend, and did lay out and expend, large sums of

money in caring for and nursing him, the said Joseph Willoeby, while sick and suffering by reason thereof, and was compelled to expend, and did lay out and expend, large sums of money for surgical and medical attendance, and will hereafter be compelled to further lay out and expend large sums of money for medical and surgical attendance, in relieving and in attempting to cure him of the effects of said injuries; that by reason of said injuries so inflicted upon said Joseph Willoeby, as aforesaid, the plaintiff has been deprived of the value of the services of said Joseph Willoeby, since the aforesaid date of said injuries, and will be deprived of his services and the value thereof until the said Joseph Willoeby shall attain the age of twenty-one years."

It will be noted that there is no direct allegation in the complaint that the plaintiff had "adopted" said Joseph Willoeby, the question being whether that fact is pleaded, or whether it appears merely by way of recital or inference. The pleader evidently took it for granted that it was unnecessary to allege directly, or prove any facts that would show, that the plaintiff had a right to the services of the boy. Of course, if to allege that the adopted son of the plaintiff was injured, is to be considered as sufficient in law to show that she was entitled to his services, then the complaint is probably good, for the facts alleged do show that she was deprived of his services.

The counsel for appellee seek to uphold the sufficiency of the complaint upon the assumption that, at common-law, the mother has a right to recover damages for the loss of her minor child, caused by the wrongful act of another, hence the demurrer to the complaint, for want of facts, admitted the right of appellee to bring such an action. As we have already stated, no such right exists at common-law, and it is

granted by the statute only upon showing that certain facts exist.

In the case of *Berry, Admr.*, v. *Louisville, etc., R. R. Co.*, 128 Ind. 484, it was held, in an action brought by a guardian of a minor, to recover damages for the alleged negligent killing of his ward, that it was necessary to allege facts showing the emancipation of the minor by his parents. There are no such allegations in the complaint before us, showing the emancipation of the boy, Joseph Willoeby, by his natural parents.

An examination of the evidence discloses an utter lack of evidence to show that the appellee was entitled to the services of the boy, Joseph Willoeby, which would entitle her to recover in this action.

Other questions, concerning the exclusion of evidence offered, and as to the amount of the damages assessed, are urged; but, inasmuch as the judgment must be reversed, and these questions may not arise again, we will not consider or decide them.

Judgment reversed, with instructions to sustain the appellant's motion for a new trial, with leave to appellee to amend her complaint.

Filed May 18, 1896.