KATE M. WELLS v. JULIA E. WELLS ET ALS.

(Filed 20 March, 1912.)

Descent and Distribution—Next of Kin—Mother—Interpretation of Statutes.

When an intestate leaves no children, but a mother and sisters, his mother is his next of kin and entitled to share equally in his personalty with his widow. Revisal, sec. 133 (3).

HOKE, J., dissenting.

PETITION to rehear.

*D. L. Ward for plaintiff.*
*Aycock & Winston, Stevens, Beasley & Weeks for defendants.*

CLARK, C. J. This is a petition to rehear this case, decided 156 N. C., 246. W. D. Wells, deceased, left surviving a widow, who, it is admitted, is entitled to one-half the personal estate, and his mother, who claims to be entitled to the other half. Revisal, 132 (3), provides: "If there be no child nor legal representatives of a deceased child, then half the estate shall be allotted to the widow, and the residue be distributed to every of the next of kin of the intestate who are in equal degree and to those who legally represent them."

The intestate left no children, and besides his mother he left two sisters and a brother, who claim to share equally with the mother in the half of the estate not conceded to the widow.

The next of kin of the intestate is his mother. His brother and sisters are one degree further removed. It follows, therefore, that the mother is entitled to half of the personalty. This language of the statute is so explicit that it can leave no room for doubt. This is what we held on the former hearing, and we see no reasoning that would permit us to change it. Exactly in point on a similar statute is *Trapp v. Billings,* 6 S. C., 569.

The petitioner contends that there are previous decisions to the contrary. If this were so, they would be clearly erroneous. No decision of any court can change the physical fact that the mother is the next of kin, and that the brothers and sisters are one degree further removed. But in fact the former decisions relied on by the petitioner are not contrary to this. Indeed, on the former hearing, in their brief, the petitioners admitted that there was "no North Carolina authority to fit the case," and conceded that the mother was next of kin to her son in preference to the brother and sisters. But they relied upon Revisal, 132 (6), to take this case out of the rule prescribed in 132 (3). Said subsection 6 does not apply to this case, because that applies only when the husband dies without leaving a widow.

On this rehearing the petitioners rely upon *Anon.,* 3 N. C., 63, which decides that the mother shares equally with the brothers and sisters when her child dies intestate *without wife,* father, or children, which is the case provided for by subsection 6 above referred to. *Gillespie v. Foy,* 40 N. C., 280, was a decision upon an entirely different state of facts, where the con-

test was between the brothers and sisters on one side and the grandfather and grandmother on the other, each claiming to be the next of kin to the deceased. In *Ferrand v. Howard*, 40 N. C., 384, it was held that where the intestate died "without leaving father, wife, or issue in the lifetime of his mother, she is to be considered as one of the next of kin and shall take a share of his personal estate with his brothers and sisters." This again is the state of fact provided for in subsection 6 of the present statute. But no case can be found in North Carolina which holds that the mother is not entitled to one-half of the estate when her son dies intestate, leaving a widow but no children. Indeed, there could be none under the present statute.

Revisal, 132 (6), provides that if the intestate dies without wife or children, "his brothers and sisters shall have an equal share with the mother of the deceased child." This of itself is a recognition that the mother is the next of kin and would have taken the entire estate otherwise. In 132 (3) there is no such provision, but it is merely provided that if there are no children the widow takes half and the next of kin, which in this case is the mother, takes the other half.

At common law the king took all the personalty, which in that rude age was usually of very little value. Afterwards the crown passed this prerogative to the Church, which took all the personalty except the reasonable parts for the widow and the children, and the Church officials claimed to dispose of it *in pios usus*. But they were accountable to no one, and were not even required to pay the debts of the decedent. By statute 13 Ed. III. (A. D. 1358) the churchmen were required to appoint an administrator who should be next of blood kin, and this relationship was computed by the civil law and not by the canon law, which was used in computing relationship in the descent of land. But by statute 21 Henry VIII. (A. D. 1530) the administrator was appointed by the Ordinary, and was required to be the widow or next of kin, or both, who after paying the intestate's debts and the reasonable parts for the widow and children retained the surplus in their own right until the statutes of 22-23 and 29, Charles II., which required the surplus

to be distributed among the next of kin in the manner provided by those statutes which became known as the Statute of Distribution.

These statutes, however, did not apply to executors, who retained the surplus for themselves till the statute in North Carolina of 1715, chapter 15. Under the English statutes 22-23 and 29, Charles II., the mother as well as the father succeeded to all the personal effects of their children who died intestate and without wife or issue, to the exclusion of brothers and sisters of the deceased. After the death of the father there is no one in equal degree with the mother, when there are no children, and therefore if there is no widow she as the next of kin is entitled to the personal estate of her son under Revisal, 132 (5); *Davis v. R. R.,* 136 N. C., 115.

The following terse analysis we find in the brief of the learned counsel of the defendants and place it on record for the convenience of the profession:

ANALYSIS OF NORTH CAROLINA STATUTE OF DISTRIBUTION,
REVISAL, 132.

### *Widow's Share.*

Section 1. One-third part to the widow of the intestate.
Section 2. A child's part to the widow.
Section 3. One-half of the estate to the widow.
Section 7. All the personal estate to the widow.

### *Child's Share in Father's Estate.*

Section 1. If not more than two children, equal portions to and among the children and such persons as legally represent such children as may then be dead.

Section 2. If more than two children, an equal share, including the widow as a child.

Section 4. Equal portions among all the children and such persons as legally represent such children as may be dead.

### *Share of Next of Kin.*

Section 1. If no child nor legal representative of a deceased child, the residue to be distributed equally to every of the next

of kin of the intestate who are in equal degree and to those who legally represent them.

Section 5. If neither widow nor child nor any legal representative of the child, the estate shall be distributed equally to every of the next of kin of the intestate who are in equal degree and to those who legally represent them.

### Brothers and Sisters of the Intestate.

Section 6. After the death of the father and in the lifetime of the mother, if any of his children shall die intestate without wife or child, every brother and sister and the representative of them shall have an equal share with the mother of the deceased child.

The English statutes of distribution are to be found in 8 Pickering's Statutes at Large, 348, and are somewhat confused and contradictory. So much so that *Lord Hardwick* in *Stanley v. Stanley*, 1 Atkyn, 455, said that the statutes were "utterly unintelligible and have no meaning," and the Court was therefore "compelled to search out the meaning and intent of the Legislature." The English decisions, therefore, can have no bearing in construing our statute, which is clear and unambiguous.

Petition dismissed.