JOSEPHINE FLOYD AND HUSBAND .V. ATLANTNC COAST LINE RAILWAY COMPANY.

(Filed 14 October, 1914.)

1. **Dead Bodies—Mutilation—Damages—Parties—Next of Kin.**
   In the order of their priority of inheritance of the personal property of the deceased, the next of kin may maintain an action to recover damages for the negligent mutilation of his dead body after death.

2. **Same—Father and Mother—Interpretation of Statutes.**
   The father in his lifetime is now, by statute, entitled to all the personal property of his deceased child, in preference to its mother, upon the intestacy of the child without wife or children (chapter 172, Public Laws 1911, now Pell's Revisal, Supplement, sec. 132) ; and hence the mother of a deceased minor child, in the lifetime of the father, may not recover for the mutilation of its body after death. *Semble,* the same result would follow from the interpretation of Revisal, sec. 132, subsec. 6, before the amendment of 1911, chapter 172.

**3. Same—Joinder of Parties.**

> The mother may not recover damages for the mutilation of the dead body of her minor child, when the father is alive, is made a formal party plaintiff, and disavows all personal interest in the recovery; for the suit is then, in effect, one for the recovery by the mother alone.

CLARK, C. J., dissenting.

APPEAL by plaintiffs from *Daniels, J.,* at August Term, 1914, of SAMPSON.

*No counsel for plaintiffs.*
*H. A. Grady for defendant.*

WALKER, J. This action was brought by the *feme* plaintiff to recover damages for the negligent mutilation of the dead body of her son, Grady O'Berry Floyd, who, it is alleged, had theretofore been killed by one of the defendant's trains. The plaintiff's counsel state very frankly in their brief that the action is one solely in behalf of the *feme* plaintiff, her coplaintiff and husband being joined with her as a nominal party under the statute, and disavowing any right to recover in his behalf. It is, therefore, to be regarded as her suit, and not as his.

In the start it may be taken as settled by us in *Kyles v. R. R.,* 147 N. C., 394, that the cause of action set out in the complaint is recognized as a legal one, and plaintiff is entitled to recover damages, provided she is the party entitled to sue for them, and establishes her case before the court and jury. These authorities may be added to those cited in the *Kyles case:* "At common law there can be no property in a dead human body, and after burial of such dead body it becomes part and parcel of the ground to which it was committed. Nevertheless, the right to bury a corpse and preserve its remains is a legal right which the courts will recognize and protect. While the body is not property in the usually recognized sense of the word, yet it may be considered as a sort of *quasi* property, to which certain persons may have rights, as they have duties to perform towards it, and the right to dispose of a corpse by decent sepulture includes the right to the possession of the body in the same condition in which death leaves it." 13 Cyc., 267-268. "In more recent times the obdurate common-law rule has been very much relaxed, and changed conditions of society and the necessity for enforcing that protection which is due to the dead have induced courts to reëxamine the grounds upon which the common-law rule reposed, and have led to modifications of its stringency. The old cases in England were decided when matters of burial and the care of the dead were within the jurisdiction of the ecclesiastical courts, and they are not longer absolutely controlling." *Foley v. Phelps,* N. Y. App. Div., 551, 555 (37 N. Y. Supp., 471). And again, in the same case: "The right

is to the possession of the corpse in the same condition it was in when death supervened. It is the right to what remains when the breath leaves the body, and not merely to such a hacked, hewed, and mutilated corpse as some stranger, an offender against the criminal law, may choose to turn over to an afflicted relative." It was said in *Pierce v. Swan Point Cemetery,* 10 R. I., 227: "That there is no right of property in a dead body, using the word in its ordinary sense, may well be admitted. Yet the burial of the dead is a subject which interests the feelings of mankind to a much greater degree than many matters of actual property. There is a duty imposed by the universal feelings of mankind to be discharged by some one toward the dead; a duty, and we may also say a right, to protect from violation; and a duty on the part of others to abstain from violation. It may, therefore, be considered as a sort of *quasi* property, and it would be discreditable to any system of law not to provide a remedy in such a case." So that it may be considered as finally settled that an action will lie in such a case by the proper person, it being an actionable wrong to him. There are very able and learned discussions of the question in *Lawson v. Chase, supra,* by *Judge Mitchell,* and in *Pearce v. Swan Point Cemetery,* 10 R. I., 227 (14 Am. Rep., 227), by *Judge Potter,* in which it is maintained that there is a *quasi* property in a dead body, which belongs to certain of the relatives of the deceased or to those who sustained close relations to him while living, which will be protected by the courts.

The judge below ruled that plaintiff was not the proper party to sue, but that the father of the deceased is the proper party, and the cause of action, if it exists, belongs to him. He therefore gave judgment of nonsuit, and plaintiff appealed.

The recovery is claimed for mental anguish, caused by the mutilation of the body. It is said in the *Kyles case,* at pp. 398 and 399: "The right to the possession of a dead body for the purpose of preservation and burial belongs, in the absence of any testamentary disposition, to the surviving husband or wife or next of kin, and when the widow was living with her husband at the time of his death, her right to the possession of the husband's body for such purpose is paramount to the next of kin. *Larson v. Chase,* 47 Minn., 307. A widow has a right of action for the unlawful mutilation of the remains of her deceased husband. *Larson v. Chase, supra;* 28 Am. St., 370; *Foley v. Phelps,* 37 N. Y. Supp., 471. While a dead body is not property in the strict sense of the common law, yet the right to bury a corpse and preserve its remains is a legal right which the courts will recognize and protect, and any violation of it will give rise to an action for damages. 8 A. and E. (2 Ed.), 834, and cases cited; 13 Cyc., 280, and cases cited. While the common law does not recognize dead bodies as property, the courts

of America and other Christian and civilized countries have held that they are *quasi* property, and that any mutilation thereof is actionable. *Larson v. Chase, supra.* This is not an action for the negligent killing of the deceased, but an action by the widow (8 A. and E. (2 Ed.), 838, and cases cited) for the willful, unlawful, wanton, and negligent mutilation of this dead body. She was entitled to his remains in the condition found when life became extinct, and for any mutilation inci- dent to the killing the defendant would not be liable, but it is liable in law for any further mutilation thereof after death, if done either will- fully, recklessly, wantonly, unlawfully, or negligently. *Larson v. Chase, supra; Foley v. Phelps, supra; R. R. v. Wilson,* 123 Ga., 62; *Lindh v. R. R.,* (Minn.), 7 L. R. S. (N. S.), 1018. Where the rights of one legally entitled to the custody of a dead body are violated by mutilation of the body or otherwise, the party injured may in an action for dam- ages recover for the mental suffering caused by the injury. Perley Mortuary Law, 20; *Renihan v. Wright,* 125 Ind., 536; *Larson v. Chase, supra; Hole v. Bonner,* 82 Texas, 33."

In that case the widow sued for the mutilation and disfigurement of her husband's body. Here the mother sues for the wrong done her in the mutilation of her son's body, the father being still alive. Can she do so? is the question for us to decide.

It is said in 13 Cyc., at p. 281, that "An unauthorized and unlawful mutilation of a corpse before burial gives rise to an action for damages in favor of the surviving husband or wife or next of kin. So the next of kin of a dead person has a cause of action against a carrier for an injury to the body of such deceased person caused by the negligent act of the carrier while transporting it for hire." And in *Burney v. Chil- dren's Hospital,* 169 Mass., 57, it appeared that a child died in a Boston hospital and an autopsy was performed upon the body without any authority from the parents. It was held that the father of the child, being its natural guardian, and after its death having a right to the possession of the body for burial, could maintain an action for damages against the hospital authorities for such unauthorized autopsy, and the Court held that "As in the case at bar there was no executor, and there could be none, as the deceased was a minor, the father, as the natural guardian of the child, was entitled to the possession of its body for burial. Being entitled to the possession of the body for the purposes of burial, is not his right against one who unlawfully interferes with it and mutilates it as great as it would be if the body was buried in his lot, and was thence unlawfully removed? That an action may be maintained in the latter case we have already seen; and we are of opinion that it may be in the former." Speaking to the same question in *Bogert v. Indianapolis,* 13 Ind., at p. 138, the Court said: "We lay

down the proposition that the bodies of the dead belong to the surviving relations, in the order of inheritance, as property, and that they have the right to dispose of them as such, within restrictions analogous to those by which the disposition of other property may be regulated."

Whatever was formerly the law under Rev. Code, ch. 64, sec. 1, and subsecs. 5 and 6; Revisal, ch. 1, sec. 132, subsecs. 5 and 6 (*Gillespie v. Foy,* 40 N. C., at marg. p. 282 of Anno. Ed.); Public Laws 1911, ch. 172; Pell's Revisal (Supplement), sec. 132, p. 4, the law has now been made clear, as that act provides that "If in the lifetime of the father any of his children shall die intestate without wife or children, then the father shall be entitled to all of the personal property of such deceased child." This was an amendment to Revisal, sec. 132, subsec. 6. When the father is dead the former law is in force, and if there is no widow or children of the deceased child, the mother and brothers and sisters take equally as distributees; and if there is a widow, she and the mother take equally. *Wells v. Wells,* 156 N. C., 246 (on rehearing, 158 N. C., 330). But the latter question, where there is no father, does not arise in this case, and we only mention it incidentally and in passing. We are concerned, though, with the recent clear and explicit statement of the law in Laws 1911, ch. 172, by which the father is made next of kin or nearest relative of his child, to the exclusion of the mother. He is the natural guardian of his child, as we have seen, and while there may have been formerly some doubt as to his status in the succession to his deceased child's personal estate, there can be none since the passage of that act, which applies to this case, as the death occurred in April, 1912, after the act took effect. There is, therefore, every reason why he should be preferred to the mother. When a contest arises between them as to the child's custody, and there is no personal disqualification of the father, he is given the preference. *Harris v. Harris,* 115 N. C., 587; *Newsome v. Bunch,* 144 N. C., 15; *In re Turner,* 151 N. C., 474. He is primarily liable for the support, maintenance, and education of his child, as between himself and its mother. 29 Cyc., 1606. He is entitled to its services and earnings. *Ibid.,* 1623; *Williams v. R. R.,* 121 N. C., 512, where *Justice Clark* (now Chief Justice) says: "For the services the son had rendered, compensation belonged to the father." And in 29 Cyc., at p. 1637 *et seq.,* it is said: "A parent has, as a general rule, a right of action against a person whose wrongful act or omission has caused an injury to the child. As between the parents, this right belongs, primarily, to the father; but, as a general rule, is given to the mother where, by reason of the father's death or otherwise, the right to the custody and services of the child has devolved upon her. The parent's right to recover for an injury to the child rests upon the doctrine of compensation. It is generally

FLOYD *v.* R. R.

stated that the basis of the right of action is the resulting loss of the services of the child, and according to some authorities this is the sole basis: so that if there be no actual loss of services, there can be no recovery by the parent; but other authorities base the right of action upon the right to services rather than the actual rendition of services. The more reasonable view is that the right of action is based not only upon the right to services, but also upon the duty of care and maintenance, so that if the parent is, by the wrong of another in injuring the child, put to extra expense in fulfilling his duty, he is entitled to recover indemnity from the wrongdoer, without reference to any loss of services resulting from the injury," citing *King v. R. R.,* 126 Ga., 794 (8 L. R. A. (N. S.), 544); *R. R. v. Goodykoontz,* 119 Ind., 11 (12 Am. St., 37); *R. R. v Willoehy,* 15 Ind. App., 312; *Keller v. St. Louis,* 152 Mo., 596 (47 L. R. A., 391), and other cases. This does not include injuries personal to the child. 29 Cyc., 1653; *Durkee v. C. P. R. Co.,* 56 Cal., 388 (38 Am. Rep., 59).

There are many other primary rights and responsibilities of the father with respect to his child which could be enumerated, but those already mentioned will suffice to show the general trend of the law with regard to his priority of claim and interest as against the other. If he is entitled to the preferential right to sue in the cases we have recited, why not where the body of the child, with whose decent burial he is charged, has been mutilated or disfigured after death? "At common law it was the duty of the father to decently inter his child and defray necessary expenses thereof, if he possessed the means." Would it not seem to follow logically and naturally, as the night the day, that if he must attend to its *decent* burial, he is entitled to recover for any indignity to or defacement of the body by which its decent interment is prevented or rendered more difficult? We are unable to perceive why this is not so.

It seems to be settled that the right to sue in a case of this kind must go to the next of kin in the order of their seniority of rank as fixed by the law, the father, in respect to a deceased child, being placed at the head of the class which may take in succession from the child, and there is no double headship, in which he shares this right with the mother. When he dies, the mother goes to the front; and if she be dead, then the next of kin who are in equal degree of kinship are advanced to this position. It is said in Iredell on Executors, pp. 559 and 560: "The next of kin referred to by the statute are to be ascertained by the same rules of consanguinity as those which determine who are entitled to letters of administration. These rules have been already considered, but it may be convenient to repeat in this place some of their results. When a child dies intestate, without wife or child, leaving a father, the

latter is entitled, as the next of kin in the first degree, to the whole of the personal estate of the intestate, exclusive of all others. Formerly, if a child had died intestate, without a wife, child, or father, his mother was entitled, as the next of kin in the first degree, to his whole personal estate; but now, by our statute, every brother and sister, and the representatives of them, shall have an equal share with her. The principle of this provision is, that otherwise the mother might marry and transfer all to another husband." It may be well to note that the recent legislation of the Congress, known as the Federal Employers' Liability Act, places the father in the forefront of those allowed to recover for the death of his son caused by negligence of the employer while the son was engaged in interstate commerce, where there is no surviving husband, widow, or children of the deceased child, as in this case. See Thornton's Emp. L. and S. Acts, sec. 79.

We have been referred by learned counsel of the plaintiff to *Davis v. R. R.*, 136 N. C., 115, as establishing the principle in this State that the father and mother are jointly the beneficiaries, under the statute of distributions already cited, of any recovery for the death of the child caused by negligence or a wrongful act; but this is not so, as an examination of that case will show. The *Chief Justice* there expressly says: "We refrain from passing upon the point, because it is not raised in this record, but it may become pertinent in another trial." Even that question is specially left open for future decision, when presented. But that is not the point here, and even if that question had been decided, as counsel supposed it had been, it would not necessarily alter our conclusion, and certainly not since the law has been changed by Laws 1911, ch. 172. Nor does Laws 1913, ch. 13, giving to a married woman her earnings, under a contract for her personal services, and any damages for personal injury to her or other tort sustained by her, have any bearing upon the case. The law of 1911 is explicit beyond the possibility of cavil, that the father shall be considered as next of kin to his child. As the male plaintiff has expressly entered a disclaimer in this case of any damages for the mutilation, and the case therefore rests solely upon the right of the *feme* plaintiff, the judge's ruling was obviously correct.

A cursory reading of *Price v. Electric Co.*, 160 N. C., 450, will show that it has no application to this case. There the husband and wife were conceded to have separate and distinct causes of action, and the husband having consented that his damages, for loss of her services, might be included in the judgment in favor of his wife, was estopped thereby to set up thereafter any claim to his said damages. There could not be two recoveries for the loss of his wife's services—one by her, with his consent, and then one by him. Having given up his cause

of action to her, he could not sue upon it himself. Here there is no prosecution of his cause of action, but solely a claim of the wife for damages supposed to be due directly to her.

Affirmed.

CLARK, C. J., dissenting: There is, strictly speaking, no property in a dead body, though its possession can be recovered. This is not an action to recover the possession of the body, but an action of tort for the mental anguish caused the mother by the wrongful mutilation of the body of her son.

The statute of distributions has no application. In *Kyles v. R. R.,* 147 N. C., 394, it was held that the widow could recover punitive damages for mutilation of the dead body of her husband. This proves that an action for the tort is not required to be brought by the next of kin, for the widow is not the next of kin of her husband. This action is a tort to be sued for by the person who most naturally would have suffered mental anguish by reason of the wrongful mutilation and indignity inflicted on the body of the dead son. He was 18 years old and the support of his mother. Her husband is an invalid, but was joined as a plaintiff as in *Price v. Electric Co.,* 160 N. C., 450.

In that case, where the husband was joined in an action with his wife to recover damages for a personal injury to them both arising from the same negligent act, and his counsel withdrew all claim for damages for him, and the action was successfully prosecuted to recover damages for the injuries inflicted on the wife, including personal and physical anguish and loss of time, the Court held that she could recover. This case is *exactly like that,* and the judgment in her favor could be recovered, even as the law formerly stood.

But in fact the position of the wife is rendered much stronger by the act which was immediately passed as soon as the next General Assembly met, chapter 13, Laws 1913, which provides, among other things: "Any damages for personal injuries or *other tort* can be recovered by her suing alone."

This is a tort pure and simple, and the wife is entitled to recover for it just as she has recovered in actions for failure to deliver a telegram whereby she as well as her husband has suffered mental anguish. *Gerock v. Tel. Co.,* 147 N. C., 7. This action is for mental anguish and damages suffered by her and not by the estate of her son, who was 18 years of age. If an action had been brought for his wrongful death, it should have been brought by the administrator.

The court granted a nonsuit upon the ground that the wife was not the "next of kin," but that the husband was. If so, he was also a party. The statement is incorrect as a matter of fact. It is true that chapter 172, Laws 1911, does amend the statute of distributions, by pro-

viding that the father shall receive "all the personal property of any of his children who shall die intestate, without wife or children," thereby giving him preference over the wife and to her total exclusion in his favor. Whatever may be said as to the justice or injustice of such provision, it does not enact an untrue statement of fact by saying that the father is nearer of kin to the child than the wife. That statute has no application to an action of this kind, which is a tort for the anguish suffered by the mother by reason of the mutilation of the body of the son whom she brought into the world and nourished. Great Nature tells us that her suffering is something apart from and usually greater than that of her husband. It is for this wrong that she has sued, and not for a share in his estate. Indeed, he had none, being a boy 18 years old, the sole support for her and her invalid husband, and of course the pride of her heart.

The plaintiff is entitled to recover as a matter of justice and of right under the legislation enacted for the benefit of married women in such cases under chapter 13, Laws 1913.