Jennipher **FORTE**, individually and on behalf of the Estate of Jeffrey Barcus, Appellants–Plaintiffs,

v.

**CONNERWOOD HEALTHCARE, INC.,** d/b/a Anderson Healthcare Center, Linda Stropes, M.D., Respiratory Therapy Co., Transitional Hospitals Corp. of Indianapolis, Tammy Sigler, R.R.T., Sheila Babcock, Paula King, Angela Jessup, Ellen Thompson Seigler, Jane Stanger, Julie Allman, Chris Leeth Beaty, Ruth Levell, Cynthia Coleman, Frances Strege, Lenora Hampton, Shirley Nance Spradlin, Sheryl McDonald, Anna Hoskins, Cathy Swafford, Paulette Czerwin, Connie McKinney, Patricia Smith (Lewis), Jerri Overman, Patty Leonard, Diane West, Sue Slack, Debbie Metzger, Cathy Haynes, and Unknown Nurses, Appellees–Defendants.

No. 48S02–9904–CV–270.

Supreme Court of Indiana.

April 18, 2001.

---

**3.** New Ind.Appellate Rule 58(A)(2).

Scott A. Benkie, Douglas A. Crawford, Benkie & Crawford, Indianapolis, Indiana, Attorneys for Appellants.

Patricia Polis McCrory, Thomas G. Safley, Paul C. Sweeney, Harrison & Moberly, Indianapolis, Indiana, Attorneys for Appellants.

## ON PETITION TO TRANSFER

RUCKER, Justice

In this opinion we conclude that punitive damages are not recoverable under the Child Wrongful Death Statute. We also conclude that a parent's common law claim for loss of a child's services survives enactment of the Child Wrongful Death Statute. However, under the common law, punitive damages are not a part of the claim and therefore are not recoverable.

### Facts

On October 2, 1995, Jennipher Forte ("Mother") placed her five-year-old developmentally disabled son in the custody of Connerwood Health Care, Inc., a nursing home doing business as Anderson Healthcare Center.[1] According to Mother, over the course of the next several days, the nursing home committed several acts of negligence that led to her son's death on October 9, 1995. Thereafter, on her own behalf and on behalf of her son's estate Mother sued the nursing home along with several members of its medical staff (referred to collectively as "Defendants"). In her initial complaint, Mother sought compensatory damages only. However, alleging that Defendants' negligence was willful and wanton, Mother later amended her complaint to include a claim for punitive damages. After filing their answer, Defendants moved for partial judgment on the pleadings with respect to punitive damages, contending that they are not available under the Child Wrongful Death Statute.[2] In response, Mother argued that not only was she entitled to recover punitive damages under the statute, but also she was entitled to punitive damages for loss of consortium apart from the statute. The trial court granted Defendants' motion and Mother pursued an interlocutory appeal.

On review, the Court of Appeals agreed that the trial court properly granted Defendants' motion concerning Mother's claim to a statutory right of punitive damages. *See Forte v. Connerwood Health-*

1. After this case was fully briefed and transfer granted, Connerwood Healthcare, Inc. filed a bankruptcy petition, triggering an automatic stay of action. *See* 11 U.S.C. § 362(a)(1). However, Connerwood's bankruptcy does not prevent this Court from proceeding with this appeal at least with respect to the non-bankrupt parties. *See Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364–65 (Fed.

Cir.1999), *reh'g denied.* Accordingly, the Court renders this decision with respect to the non-bankrupt parties only. As for Connerwood Healthcare, Inc., this appeal remains in abeyance by operation of the bankruptcy stay.

2. Ind.Code § 34–1–1–8 (current version at I.C. § 34–23–2–1).

*care, Inc.,* 702 N.E.2d 1108, 1111 (Ind.Ct. App.1998). However, the Court of Appeals determined that the allegations in Mother's complaint established facts entitling Mother to punitive damages on another theory — common law loss of services. *Id.* at 1113. Having previously granted transfer, we affirm the trial court.

## Discussion

### I. Punitive Damages Under the Child Wrongful Death Statute

■ Although this Court has never addressed the issue, we agree with the Court of Appeals that punitive damages are not recoverable under the Child Wrongful Death Statute. At common law, there was no liability in tort for killing another because actions for personal injury did not survive the death of the injured party. *Gann v. Worman,* 69 Ind. 458, 461 (1880); *Ed Wiersma Trucking Co. v. Pfaff,* 643 N.E.2d 909, 911 (Ind.Ct.App.1994), *adopted by,* 678 N.E.2d 110 (Ind.1997). Our legislature first authorized a cause of action for the death of a minor in 1851, the same year Indiana's second constitution was adopted.[3] Since 1851, the statute has been amended several times, the latest of which was in 1998.[4] Until 1987, the changes in the statute from its original enactment were basically those of form.

Otherwise the statute remained essentially the same.

Although the predecessor to the 1987 statute contained no provisions concerning damages, case law severely restricted the damages recoverable in such actions to allow recovery only for pecuniary losses sustained by the parents. *See Miller v. Mayberry,* 506 N.E.2d 7, 11 (Ind.1987), *aff'd,* 546 N.E.2d 834 (Ind.1989) (superceded by statute). The proper measure of damages for the death of a minor child was determined to be the value of the child's services from the time of death until majority, taken in connection with the child's prospects in life, less the cost of support and maintenance, to which may be added, in a proper case, the expense of care and attention made necessary by the injury, funeral expenses, and medical services. *Thompson v. Town of Fort Branch,* 204 Ind. 152, 164, 178 N.E. 440, 444 (1931); *Boland v. Greer,* 409 N.E.2d 1116, 1119 (Ind.Ct.App.1980). As the Court of Appeals observed, "recovery for wrongful death of a child has been restricted to the actual pecuniary loss sustained." *Andis v. Hawkins,* 489 N.E.2d 78, 83 (Ind.Ct.App. 1986).

With enactment of the 1987 amendment, the legislature set forth the recoverable damages for the first time.[5] Consistent

---

**3.** The first Child Wrongful Death Act provided:

A father, or in case of his death or desertion of his family, or imprisonment, the mother, may maintain an action for the injury or death of a child; and a guardian for the injury or death of his ward. But when the action is brought by the guardian for an injury to his ward, the damages shall inure to the benefit of his ward.

1852 Ind. Acts vol. 2, pt. 2, ch. 1, art. 2, § 27, p. 56.

**4.** *See* Pub.L. No. 1–1998, § 18, 1998 Ind. Acts 141–43; Pub.L. No. 33–1989, § 116, 1989 Ind. Acts 608–10; Pub.L. No. 306–1987, § 1, 1987 Ind. Acts 2990–91; Pub.L. No. 316–

1975, § 1 1975 Ind. Acts 1759; 1951 Ind. Acts ch. 112, § 1, p. 307–08; 1881 Ind. Acts ch. 38, § 29, p. 244.

**5.** The statute provides in pertinent part:

In an action to recover for the death of a child, the plaintiff may recover damages:

(1) for the loss of the child's services;

(2) for the loss of the child's love and companionship; and

(3) to pay the expenses of:

  (A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;

  (B) the child's funeral and burial;

  (C) the reasonable expense of psychiatric and psychological counseling incurred by

with then existing case authority, the statute excluded any reference to punitive damages. The statute has been amended twice since 1987, but the damages portion has remained unchanged.[6]

Concerning the general wrongful death statute, it has been held that because an action for wrongful death did not exist at common law, the statute should be strictly construed against the expansion of liability. *Thomas v. Eads,* 400 N.E.2d 778, 780 (Ind.Ct.App.1980). The same is true for the Child Wrongful Death Statute. "In reviewing such a statute, we presume that the legislature did not intend to make any changes in the common law beyond those declared either in express terms or by unmistakable implication." *South Bend Cmty. Schs. v. Widawski,* 622 N.E.2d 160, 162 (Ind.1993).

We acknowledge that for more than a century, Indiana common law has permitted the recovery of punitive damages under appropriate circumstances. *See, e.g., Citizens' St. R.R. Co. of Indianapolis v. Willoeby,* 134 Ind. 563, 569, 33 N.E. 627, 629 (1893); *Louisville, New Albany & Chi. Ry. Co. v. Wolfe,* 128 Ind. 347, 352–53, 27 N.E. 606, 607 (1891). Thus it may be argued that by enacting the Child Wrongful Death Statute, the legislature did not intend to change the common law with respect to punitive damages. *See, e.g., Louisville, New Albany & Chi. Ry.*

*Co. v. Goodykoontz,* 119 Ind. 111, 112, 21 N.E. 472, 472 (1889) (declaring that the Child Wrongful Death Statute added to the common law remedy by allowing a parent to recover all the probable pecuniary loss resulting from the death of a child).[7] However, even assuming that punitive damages may have been recoverable at common law, at least since the 1987 amendment, the Child Wrongful Death Statute has contained an exclusive list of damages recoverable by a child's parent or guardian. Absent in the list is any reference to punitive damages. "When certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded." *Health & Hosp. Corp. of Marion County v. Marion County,* 470 N.E.2d 1348, 1355 (Ind.Ct.App.1984). We conclude, therefore, that even if the common law allowed punitive damages in an action for the wrongful death of a child, our legislature has exercised its prerogative to change the common law by "unmistakable implication." *See South Bend Cmty. Schs.,* 622 N.E.2d at 162. Accordingly, the trial court properly granted Defendants' motion for partial judgment on the pleadings concerning this issue.

## II. Common Law Claim for Loss of Services of a Child

We first address a preliminary matter. In their Brief in Support of Peti-

---

a surviving parent or minor sibling of the child that is required because of the death of the child;

(D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and

(E) the administration of the child's estate, including reasonable attorney's fees.

I.C. § 34–23–2–1(e). *See* Pub.L. No. 306–1987, § 1, 1987 Ind. Acts 2990–91.

6. *See* Pub.L. No. 1–1998, § 18, 1998 Ind. Acts 141–43; Pub.L. No. 33–1989, § 116, 1989 Ind. Acts 608–10.

7. *See also Forte,* 702 N.E.2d at 1111 n. 3 (commenting that the law in this area has been developed primarily in federal court decisions and observing that at least one such decision noted that Indiana common law has historically permitted the recovery of punitive damages under appropriate circumstances and the general wrongful death statute permits an action whenever the decedent might have maintained an action had he or she lived).

tion to Transfer, Defendants question the Court of Appeals' determination that Mother could pursue a common law claim for loss of services of her child. According to Defendants, Mother never made a claim for loss of services; rather, her claim was for a loss of consortium. Defendants argue that the two are not the same. We agree the claims are different.[8] However, because of the procedural posture of this case, the Court of Appeals was correct in addressing the issue.

■ After Mother filed her amended complaint and Defendants filed their answer, Defendants moved for judgment on the pleadings under the provisions of Indiana Trial Rule 12(C), which the trial court granted. A motion for judgment on the pleadings should be granted " 'only where it is clear from the face of the complaint that under no circumstances could relief be granted.' " *Culver–Union Twp. Ambulance Serv. v. Steindler*, 629 N.E.2d 1231, 1235 (Ind.1994) (quoting *Martin v. Shea*, 463 N.E.2d 1092, 1093 (Ind.1984)). In this case, it is true that Mother's complaint does not mention the loss of services of her child. However, our reading of the complaint shows factual allegations sufficient to support a claim for loss of services. Thus we see no problem with the Court of Appeals addressing the issue. For reasons discussed below, however, we disagree with our colleagues that

punitive damages are recoverable under a claim for loss of services.

The origins of a common law claim for loss of services are generally traced to 13th Century Roman law. Francis Bowes Sayre, *Inducing Breach of Contract*, 36 Harv. L.Rev. 663, 663–64 (1923). The Roman system allowed the head of the household to pursue a claim stemming from a violent action or insult upon any member of the household. *Id.* at 665. English common law followed suit in the 14th Century when it allowed a master, in order to protect his property right in his servant, to initiate a lawsuit to compensate him for lost services due to an intentional injury to his property. *Id.; see also* Keeton et al., § 125, at 931.

The development of loss of services claims in this country followed the English common law. However, in addition to a master's claim to the services of his servant, the claim was expanded to include a father's right to recover for the loss of services of his child. *See, e.g., Plummer v. Webb*, 19 F. Cas. 894, 896 (D.Me.1825) (noting that a parent may maintain an action for loss of services stemming from injuries to a child under the guardianship of his father); *Ream v. Rank*, 3 Serg. & Rawle 215, 216–17 (Pa.1817) (acknowledging that loss of services is the proper claim for the luring away of a father's daughter). Similar to a master's loss of services of his servant, a father's loss of

---

**8.** A claim for loss of services differs from loss of consortium because loss of services "d[oes] not expand to include intangible losses, ... the parent [has] no claim for loss of the child's society and companionship." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts*, § 125, at 934 (5th ed.1984) (footnotes omitted). Whereas, "[c]onsortium is more than 'services' in the ordinary sense[, a]n action for consortium rests in large part on the impairment or destruction of the sexual life of the couple." *Boland*, 409 N.E.2d at 1120. This Court has determined that a child cannot

recover loss of consortium damages for the death of a parent because "[t]he predominant element in the concept of consortium has been described as the loss of the sexual relationship." *Dearborn Fabricating & Eng'g Corp., Inc. v. Wickham*, 551 N.E.2d 1135, 1136 (Ind.1990) (quotation omitted). This Court concluded "apart from wrongful death actions, a child may not maintain an action for loss of parental consortium when the parent is negligently injured by a third person." *Id.* at 1139.

services of his child was in the nature of a property right with recoverable damages limited to pecuniary losses for injury to the father's property. *See Houston & Great N. R.R. Co. v. Miller*, 49 Tex. 322, 332 (1878) (declaring that a father is entitled to damages for loss of child's services, medical expenses, and any other expenses rendered necessary by the injury); *Oakland Ry. Co. v. Fielding*, 48 Pa. 320, 327–28 (1864) (holding that the trial court was correct in instructing the jury that the father was limited to pecuniary damages in his loss of services claim).

As with other jurisdictions, by the latter half of the nineteenth century, this jurisdiction also began to recognize a father's right to recover for the services he lost as a result of an injured child. *See Binford v. Johnston*, 82 Ind. 426, 431 (1882); *Boyd v. Blaisdell*, 15 Ind. 73, 75–76 (1860); *Long v. Morrison*, 14 Ind. 595, 596–97 (1860). Our courts also limited the recoverable damages to monetary or pecuniary losses only. *See Thompson*, 204 Ind. at 164, 178 N.E. at 444; *Long*, 14 Ind. at 600; *Citizens' St. R.R. Co. v. Willoeby*, 15 Ind.App. 312, 321–22, 43 N.E. 1058, 1059 (1896).

As the case law has developed, Indiana has continued to acknowledge a common law cause of action for loss of a child's services. Although we have long departed from the notion that only the father may pursue such an action—either parent may do so—we have continued to maintain that the action is in the nature of a property right as opposed to an action for personal injury. *See Graf v. City Transit Co.*, 220 Ind. 249, 251–52, 41 N.E.2d 941, 942 (1942) (an action for loss of services is an action "for injuries to property" rather than for "injuries to person"); *Buffalo v. Buffalo*, 441 N.E.2d 711, 714 (Ind.Ct.App.1982) ("A suit brought by a parent to recover the value of lost services of a minor child resulting from an injury caused by a defendant is an action for injury to property rights.") (superceded by I.C. § 9–3–3–1 on other grounds).

▪ Consistent with the common law, the Child Wrongful Death Statute also allows a parent to pursue damages for loss of a child's services. However, unlike a common law claim where damages are measured from the date of injury to the date of death, *see Mayhew v. Burns*, 103 Ind. 328, 333, 2 N.E. 793, 796 (1885), under the Child Wrongful Death Statute the recovery for loss of services is measured from the date of the child's death until a subsequent triggering event. I.C. § 34–23–2–1(f).[9] Because the statute allows a parent to pursue a claim for damages after the death of a child, the statute marks a radical departure from the common law. That is so because, as we have already noted, under the common law a claim of injury expired with the death of the injured party. *Gann*, 69 Ind. at 461; *Ed Wiersma Trucking Co.*, 643 N.E.2d at 911. Now, a parent may pursue a claim after his or her child's death and is entitled to a variety of statutory damages including loss of services. However, the statute does not address, either in express terms or by unmistakable implication, a claim for loss of services arising during the child's lifetime; that is, from the date of injury to the date of death. We conclude therefore that a parent's common law claim for loss of a

---

9. Specifically the statute provides:

(f) Damages may be awarded under this section only with respect to the period of time from the death of the child until:

(1) the date that the child would have reached:

  (A) twenty (20) years of age; or

  (B) twenty-three (23) years of age, if the child was enrolled in an institution of higher education or in a vocational school or program; or

(2) date of the child's last surviving parent's death; whichever first occurs.

I.C. § 34–23–2–1(f).

child's services survives enactment of the Child Wrongful Death Statute. The question remains, however, whether punitive damages are recoverable under a common law claim. We conclude they are not.

We first acknowledge that we have found no cases in this jurisdiction specifically addressing whether a parent is entitled to punitive damages as a result of injury to his or her property rights in a child. *Cf. Thompson,* 204 Ind. at 157, 178 N.E. at 442 (citing with approval *Tidd v. Skinner,* 225 N.Y. 422, 122 N.E. 247, 251 (1919), in which New York's highest court rejected the notion that punitive damages are recoverable in action for loss of a child's services). Indeed, we have found only two cases in this jurisdiction in which a parent even appears to have sought punitive damages on a claim for loss of a child's services. *See Montgomery v. Crum,* 150 N.E. 393 (Ind.Ct.App.1926) (ruling that a $25,000.00 award for loss of a child's services is excessive and that punitive damages were not recoverable because of the rule of law at the time declaring that such damages are unavailable where the commission of a wrong subjected the wrongdoer to both criminal prosecution and civil liability), *rev'd,* 199 Ind. 660, 161 N.E. 251 (1928); *accord Struble v. Nodwift,* 11 Ind. 64 (1858) (finding error in the trial court's instruction to the jury that vindictive damages are available for claims of loss of services, when the wrongdoer was liable for criminal prosecution). We are of the view that the dearth of case authority on the subject of whether a parent was entitled to recover punitive damages for loss of a child's services is due at least in part to the fact that an injury to a child that might have given rise to such a claim was in the nature of a personal injury, owned by the child himself, and inured to his benefit alone. *See Long,* 14 Ind. at 597 (noting that at common law, in addition to the parent's loss of services claim, an infant still had an action for personal injury);

*State v. Eaton,* 659 N.E.2d 232, 237 (Ind. Ct.App.1995) (noting that when a minor is injured by a wrongful act, the child has a personal injury claim and the parent has a claim for loss of services); *see also* 22 Am.Jur.2d *Damages* § 781 (1988) (declaring that historically, exemplary damages have only been available to the immediate person suffering the injury); J.D. Perovich, Annotation, *Spouse's or Parent's Right to Recover Punitive Damages in Connection with Recovery of Damages for Medical Expenses or Loss of Services or Consortium Arising from Personal Injury to Other Spouse or to Child,* 25 A.L.R.3d 1416, 1417–18 (1969) (compiling a jurisdiction by jurisdiction list of the courts declaring that when a parent sues for loss of services from an injury negligently inflicted upon a child, recovery is purely compensatory and not punitive).

Our review of the relevant case authority leads us to the conclusion that although Indiana common law has permitted the recovery of punitive damages under "appropriate circumstances," those circumstances have never included the recovery of punitive damages for a claim of loss of a child's services. Our legislature has not addressed this issue, and Mother has not argued that this Court should abandon the doctrine of *stare decisis* and change the common law. Accordingly, as with the claim for a statutory right of punitive damages, the trial court properly granted Defendants' motion for partial judgment on the pleadings on this issue as well.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.