### Albert Palenzke v. Henry F. Bruning et al.

1. CORONERS—*Do Not Act in a Judicial Capacity When Holding an Inquest.*—In this State, under the present constitution (1870), the coroner and his jury do not constitute a court and are not clothed with judicial powers.

2. SAME—*Right to Hold Inquest—Powers and Duties.*—The right of a coroner to hold an inquest in accordance with the provisions of the statute is not open to question, but his right and power to do so is to be exercised in pursuance of the statutory authority. His office gives him no general right to enter the house of mourning at his mere option or caprice and take with him a doctor to perform an autopsy. He can only do this in case the deceased person is supposed to have come to

his or her death by violence, casualty or undue means, and he is then required to summon a jury forthwith to inquire into the cause and manner of the death.

3. RIGHTS OF PROPERTY—*In Dead Bodies.*—While it is true there is no right of property in a dead body in the ordinary sense, it is also true that the nearest relatives of the deceased are, and have been in all ages so far as known, except under ecclesiastical law, recognized as legally entitled to the custody of such body and as having the right to lay it away in burial. It is the duty no less than the right of such relatives to protect it from unnecessary violation, and any infringement upon such right, except where made necessary for the discovery and punishment of crime, violates the tenderest sentiments of humanity.

4. SAME—*In Dead Bodies Defined—Rights of Action.*—The rights of the next of kin in the body of a deceased relative is the right to the custody of what remains when the breath leaves the body, and not merely to a hacked and mutilated corpse, such as some stranger may choose to turn over to them, and an invasion or violation of this right furnishes a ground for a civil action for damages.

5. BURIAL—*Exclusive Rights of, in the Next of Kin.*—In the absence of testamentary direction on the part of the deceased, the exclusive right of burial or of designating the place in which human remains shall be interred is with the next of kin.

6. SAME—*Dead Bodies, Under the Statute of This State.*—The right to the remains of deceased kindred is recognized by the statute (R. S. Chap. 91, Sec. 1,) of this State, which requires all state, county, town and city officers in whose custody the body of a deceased person, required to be buried at public expense, may be, to surrender such body for interment to the next of kin instead of turning it over to a medical school for the advancement of science.

Trespass on the Case, for the mutilation of a dead body. Appeal from the Circuit Court of Cook County; the Hon. JESSE HOLDOM. Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded. Opinion filed November 26, 1901.

EMIL A. MEYER, attorney for appellant.

The right to bury a corpse and preserve its remains is a legal right which the courts will recognize and protect, and any violation of it will give rise to an action for damages. Larson v. Chase, 47 Minn. 307; Foley v. Phelps, 1 N. Y. App. Div. 551; Renihan v. Wright, 125 Ind. 536; Hale v. Bonner, 82 Tex. 33; Bessemer Land, etc., Co. v. Jenkins, 111 Ala. 135.

Where the rights of one legally entitled to the custody of a dead body are violated by mutilation of the body or other-

wise, the party injured may in an action for damages recover for the mental suffering caused by the injury.   Larson· v. Chase, 47 Minn. 307; Hale v. Bonner, 82 Tex. 33; Renihan v. Wright, 125 Ind. 536.·

It is the duty of the father to bury the body of his deceased child, and he is bound to provide for the funeral of his child if he can in any lawful way procure the means of so doing.   Reg v. Vann, 8 Eng. L. and Equity, 596.

D. R. THOMAS, attorney for appellee Henry F. Bruning, and ARND & ARND, attorneys for appellee Louis Hacker, contended that the statute makes it the duty of a coroner to hold an inquisition over a dead body, citing Hurd's Stat., Chap. 31, Sec. 10.

A coroner may cause a post-mortem in the nature of an autopsy to be made where a superficial view of the body is insufficient to determine the cause of death and where the circumstances, in his discretion, warrant a thorough investigation.   In such cases he may employ an expert to examine the body.   7 A. & E. Enc. of Law, 2d Ed., Vol. 7, page 608, and cases cited.

The employment of a physician to make an autopsy rests in the sound discretion of the coroner and may be exercised whether the jury deem such employment requisite or not. St. Francis County v. Cummings, 55 Ark. 419.

In Illinois it is held that at common law, as well as under the statute of Edward I. and our statute concerning coroners, which are but declaratory of the common law, the coroner holding an inquest *super visum corporis*, is in the performance of functions judicial in their character—so distinctly judicial that he is protected under the principles which protect judicial officers from responsibility in a civil action brought by a private person.   U. S. Life Insurance Co. ·v. Vocke, 129 Ill. 557; see page 566.

Coroners have powers to hold inquests and order autopsies to be made when in their judgment an autopsy is an appropriate means of ascertaining the cause of a person's death, and in such case a coroner may lawfully order an

autopsy to be made without the consent of the family of the deceased. A physician who makes a post-mortem examination in the usual manner and in pursuance of authority of the coroner is not liable in an action to the family of the deceased for the mutilation of his body without their consent. Young v. College of Physicians and Surgeons, 81 Md. 358.

At common law the office of coroner was one of great dignity. Its jurisdiction was quite extensive, the limits of which have been the subject of conflicting opinions. The statute *de officio coronatoris*, 4 Edw. I. (in affirmance of the common law), defined the powers of the coroner, and this statute is the basis of his modern jurisdiction. In holding inquisitions he acts judicially, but in performing the duties of sheriff he acts ministerially. 7 A. & E. Enc. of Law, 602, and cases cited.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is an action brought by appellant against George Berz, coroner of Cook county, Henry F. Bruning, a physician, and Louis Hacker, an undertaker, to recover damages for pain and anguish of mind, and injury to property caused by an alleged wanton, malicious and wrongful mutilation of the body of appellant's deceased minor son. The declaration charges, in substance, that the defendants took the body of the deceased, which had been prepared and coffined for burial, from the parents' possession, against the will of the latter, and conducted, at a wholly improper time, a post-mortem examination, which it then became the duty of the defendants to conduct in a decent and respectable manner, and to return the body to the plaintiff, without unnecessary mutilation, in a fit and proper condition for burial; but that the defendants nevertheless proceeded, wantonly and maliciously, to " cut open, hack, tear and disfigure the body, bespattering the clothing and the house, furniture and premises; that the brain, liver and spleen were removed, and in the presence of friends and relatives were conveyed to and thrown into a privy or water-closet; that the plaint-

iff was thus deprived of the right of burial of the parts so removed, and that the decent and proper burial of the deceased was by the conduct of the defendants prevented.

The trial court sustained a general demurrer to the declaration, which consisted of three counts. No specific defect in any of the counts is pointed out, and the demurrer was sustained on the broad, general ground that no cause of action exists, under the facts as stated, against the coroner, and the physician and undertaker, his assistants. Unless the declaration is defective in substance the demurrer was not properly sustained. A general demurrer admits the facts well pleaded. Arenz v. Weir, 89 Ill. 25.

It is contended on the part of appellees that the coroner in holding an inquisition, acts in a judicial capacity, and that " he is protected under the principles which protect judicial officers from responsibility in a civil action brought by a private person."

Section 10, Chap. 31, R. S., is as follows : "Every coroner, whenever and as soon as he knows or is informed that the dead body of any person is found or lying within his county supposed to have come to his or her death by violence, casualty or any undue means, shall repair to the place where the dead body is, and take charge of the same, and forthwith summon a jury of six good and lawful men of the neighborhood where the body is found or lying, to assemble at the place where the body is, at such time as he shall direct, and upon a view of the body to inquire into the cause and manner of the death."

Section 21 provides : " After the inquisition the coroner may deliver the body of the deceased to his friends, if there be any, but if not, he shall cause him to be decently buried, the expense to be paid from the property of the deceased, if there is sufficient, if not, by the county."

In the case of United States Life Ins. Co. v. Vocke, 129 Ill. 557, 562–3, will be found a review by the court of the powers and duties of coroners. Appellees' attorneys cite the case as authority for their claim that the coroner in holding an inquisition acts in a judicial capacity. The case

does not so hold.   It decides only, in the language of the opinion (p. 664), " whether a coroner's inquisition should be used as evidence " in a case of that character.   In the separate but concurring opinion of Mr. Justice Baker, the conclusion is reached that while " at common law, and in this State until the adoption of the constitution of 1848, a coroner and his jury holding an inquest *post mortem*, constituted a court with judicial powers," it is nevertheless " certain in this State, and under its present constitution, the coroner and his jury do not constitute a court, and are not clothed with judicial powers, as was the case at common law."   This, because article 6 of the constitution of 1870 " disposes of all the judicial power of the State, and completely exhausts the subject, and a coroner's inquest is not provided for therein."

The right of a coroner to hold an inquest in accordance with the provisions of the statute is not open to question. But his right and power so to do is to be exercised in pursuance of the statutory authority.   His office in this State gives him no general right to enter any house of mourning at his mere option or caprice, and take with him a doctor to perform an autopsy.   He can do this only in case the deceased is " supposed to have come to his or her death by violence, casualty or undue means," and he is then required to summon a jury " forthwith to inquire into the cause and manner of death."

It may well be questioned whether he has authority to proceed to violate the dead body by an autopsy, without the advisability being made apparent by some preliminary inquiry of the jury.   If it should be made plain upon such inquiry that the death was purely from accident or natural causes, no reason for an autopsy would exist, and the coroner and his assistants would have no more right to dissect the remains against the wishes of the relatives entitled to possession of them, than any mere interloper.   If, on the other hand, it became apparent on preliminary inquiry that an autopsy was necessary or advisable to ascertain the facts, such autopsy would no doubt be justified.

While it may be true there is no right of property in a dead body, in the ordinary sense, it is also true that the nearest relatives of the deceased are and have been in all ages, so far as known, except under ecclesiastical law, recognized as legally entitled to its custody, to lay it away in burial. It is the duty no less than the right of such relatives to protect it from unnecessary violation, and any infringement upon that right, except where made necessary for the discovery and punishment of crime, violates the tenderest sentiments of humanity. In Pierce v. Proprietors of Swan Point Cemetery, 10 Rhode Island, 277, p. 242, the court says: "Although, as we have said, the body is not property in the usually recognized sense of the word, yet we may consider it as a sort of *quasi*.property, to which certain persons may have rights, as they have duties to perform toward it, arising out of our common humanity." In Foley v. Phelps, 1 N. Y. Appellate Division Supreme Court Reports, 551 (p. 553), it is said: "It has been stated in general terms in several cases that in the absence of testamentary direction on the part of the deceased the exclusive right of burial, and of designating the place in which human remains shall be interred, is with the next of kin." In this last mentioned case, the action was brought to recover damages for unauthorized dissection of the remains of the plaintiff's husband, in that State an unlawful act; and it is further said by the court: "Irrespective of any claim of property, the right which inhered in the plaintiff as the decedent's widow, and in one sense his nearest relative, was a right to the possession of the body for the purpose of burying it. * * * It is the right to what remains when the breath leaves the body, and not merely to such a hacked, hewed and mutilated corpse as some stranger, an offender against the criminal law, may choose to turn over to an afflicted relative. If this right exists, as we think it clearly does, the invasion or violation of it furnishes a ground for a civil action for damages."

The right to the remains of deceased kindred is recognized by the statute of this State, which requires all state,

county, town and city officers in whose custody the body of any deceased person required to be buried at public expense may be, to surrender such remains for interment to such kindred, instead of turning them over to medical schools for advancement of science. (R. S. Chap. 91, Sec. 1.)

The appellant in this case was undoubtedly entitled to the remains of his son for proper burial. Unless sufficient reason existed for an autopsy he was entitled to the body unmutilated. If such reason did exist, he was, nevertheless, entitled to the whole body, even though necessarily disfigured, unless it proved necessary to remove and preserve some particular organ for further examination, as to whether a crime had been committed, or for evidence. But no one—coroner, nor doctor, nor undertaker—had the right to remove parts of the body and, without the parents' consent, throw them into a privy vault. Such conduct violates every instinct of propriety, and could not fail to outrage the feelings of the kindred of the deceased. For such violation of the appellant's rights an action for damages can, we think, be maintained. It follows that the demurrer to the declaration was improperly sustained, and the judgment of the Superior Court must be reversed and the cause remanded.