# CHARLESTON.

### BERNS *v.* SHAW.

### Submitted June 12, 1908.   Decided May 11, 1909.

1. EQUITY—*Jurisdiction—Money Lost in Gaming Contracts—Recovery.*

    Courts of equity have concurrent jurisdiction with courts of law in suits to recover back money lost in gaming contracts, regardless of the question of necessity for discovery. (p. 669.)

2. GAMING—*Partnership—Gambling Business.*

    As a general rule there can be no partnership in an illegal business. This includes the business of gambling. (p. 671.)

3. SAME—*Persons Engaged in Business—Joint and Several Liability.*

    Where two or more persons engaged in the business of gambling, by whatever arrangement the business is conducted,

if all are to share in the profits, and money is lost to them, they are all joint tort feasors, and liable jointly or severally, and may be sued jointly or severally by the loser to recover the money lost to them. (p. 672.)

4.    Equity—*Recovering Back Money Lost in Gaming—Cross-Bill.*

In a suit in equity by one to recover back money lost by him to another in a gambling contract, the defendant may, by a cross bill, or a cross answer, also recover back money lost by him to plaintiff in such gambling contract. (p. 672.)

Appeal from Circuit Court, Marion County.

Bill by Charles Berns against A. E. Shaw. Judgment for defendant, and plaintiff appeals.

*Reversed, and Judgment rendered for Plaintiff.*

Cornwell & Abbatichio, for appellant.

C. Powell and Harry Shaw, for appellee.

Miller, President:

This is a suit in equity under sections 3435 and 3437, Code 1906, to recover $335.00 alleged to have been lost by plaintiff to defendant in March, 1904, in playing the game called roulette. The suit was commenced in the intermediate court of Marion county, where on bill, answer and proof the plaintiff's bill was dismissed on the ground, as recited in the decree appealed from, that the suit could not be maintained against defendant alone, the evidence showing that D. E. Thomas was a partner with Shaw in the transaction and a necessary party to the suit, and upon his petition presented to the circuit court the plaintiff was denied an appeal and *supersedeas* to said decree, and he has brought the case here.

The appellee claims that regardless of the reason given by the intermediate court therefor, the decree dismissing the bill was clearly right for want of equity and should have been dismissed on demurrer. This presents the question argued here on both sides, whether the remedy in equity given by section 3437, is cumulative of the remedy at law given by the preceding section 3436, or is available only where some discovery is necessary and the remedy at law inadequate. Said section 3437, provides: "Such loser may file a bill in equity against such winner, who shall answer the same, and upon discovery and repayment of the money or property so won, or its value, such winner shall be dis-

charged from any forfeiture or punishment which he may have
incurred for winning the same." The appellee insists that as
the bill shows no necessity for discovery, but on the contrary,
that plaintiff has an adequate remedy at law, given by section
3436, a court of equity is without jurisdiction. The allegations
of the bill in effect simply charge that plaintiff lost to defendant
the said sum of money, and prays for a discovery by defendant
of the money so won by him from plaintiff and for a decree for
the money.

These statutes have come down to us through Virginia, prac-
tically unchanged, from 9 Anne, chapter 14; 2 Kelley's Anno.
Stat. W. Va. p. 646; *White* v. *Washington's Ex'or.,* 5 Grat. 645.
Story says, 1 Story Eq. Jur., section 303, p. 307, referring to
jurisdiction in equity to suppress gaming contracts: "No one
has doubted that under such circumstances a bill in equity
might be maintained to have any gaming security delivered up
and cancelled. But it was at one time held that if the money
were actually paid in a case of gaming, Courts of Equity ought
not to assist the loser to recover it back upon the ground that
he is *particeps criminis*". And in section 304, he says: "But
it is difficult to perceive why upon principle the money should
not be recoverable back in furtherance of a great public policy,
independently of any statutable provision. It has been decided
that if money is paid upon a gaming security it may be recovered
back, for the security is utterly void. Why is not the original
gaming contract equally void? And if it be, why is it not
equally within the rule, and the policy on which the rule is found-
ed?" To the same effect is 2 Pom. Eq. Jur. (3rd Ed.) § 941.
It would thus seem that independently of statute such cases
were within the domain of original equity jurisdiction, and that
the statute was unnecessary to confer jurisdiction. But in states
like ours, which have adopted the provision of the Statute of
Anne, the question of equity jurisdiction it seems is no longer
a subject of doubt or controversy. *White* v. *Washington, supra;*
*Boner* v. *Montgomery,* 9 B. Mon. 123; 20 Cyc. 955, and other
cases cited in notes. As before the statute jurisdiction to recover
back money paid in execution of a gaming contract was in equity
alone, it is by virtue of the statute that courts of law now have
concurrent jurisdiction. In the well considered case of *Mc-
Kinney* v. *Pope's Adm'r.,* 3 B. Mon. 93, the policy and purposes

of these statutes is considered, and the previous case of *Downs* v. *Quarles* is referred to, in which latter case the bill alleged the necessity of a discovery which the courts say possibly might have been deemed a ground for taking jurisdiction if there had been a legal remedy under the statute, "But", says the Court, at page 96, "the question formally stated by the Court, after showing that there was no remedy under the statutes, seems to relate to the general power and jurisdiction of a Court of Equity to decree the restitution of money paid on a gaming contract, which question is unaffected by the mere fact that a discovery might or might not be necessary in the particular case; the solution of the question is made to turn, not upon the want of jurisdiction in the Court to decree the money to the loser, if he had been equitably entitled to it, but upon the absence of a right to recover, arising from the equality of his guilt, and upon the doubtful propriety, with a view to the policy of suppressing the vice of gaming, of restoring to the loser the money which he has paid." The case of *Downs* v. *Quarles* was decided before the statute of Kentucky of 1833. In considering the effect of the statute the Kentucky court in this case further says: "Then the question whether the objects of the statute will be promoted by restoring to the loser his losses is closed, and the courts, both of law and equity, are bound to advance the object by using their appropriate powers in advancement of the means adopted by the Legislature." And the court in that case in deciding the exact question we have here in favor of the concurrent jurisdiction in equity to recover back money lost in gaming says: "The Court then has jurisdiction to grant this relief in the case of gaming, by analogy, and because it has jurisdiction in like cases. And it is not too liberal a construction of the statute, which gives the right to sue 'in any court having jurisdiction in like cases', without intimating any preference for the remedy at law, to say that as the Court of Equity had jurisdiction in like cases, the right of suing in that forum as well as in the court of law, is expressly given by the statute. It may be added that it has been maintained by eminent jurists, that independently of any statutory provision for the recovery of money lost at gaming, it should be recoverable back, because it is in furtherance of a great public policy: 1 Story's Equity, 303, and consequently that the Court

of Equity should have granted such relief." We think this case states the law correctly.

But has the plaintiff made out a case entitling him to relief? The intermediate court evidently thought Thomas a partner and therefore a necessary party to the suit and denied relief on that ground. As a general rule there can be no partnership in an illegal business. This includes gambling. Parsons on Partnership, section 8 and note; George on Partnership, 25. Illegality of a partnership, however, affords no reason why it should not be sued on a transaction with it that is legal in itself. 1 Lindley on Partnership (4th Ed.), star page 200. There was no plea in abatement, however, nor is there any defense in the answer on account of the non-joinder of Thomas. The answer of defendant is not that the claim sued for is a partnership obligation, and that the action should abate because of non-joinder of Thomas, but that the money alleged to have been lost by plaintiff was lost to Thomas and not to him. Shaw denies the partnership and claims that Thomas and not himself was engaged in the gambling business. So we need not consider the question of partnership or partnership liability. The question does not fairly arise.

The statute gives right of action against the person to whom the money is lost. The question then is to whom did plaintiff lose his money? It is admitted that he lost it, and that when he lost it, Thomas was in charge of the roulette wheel on which the game was played, and the evidence shows that the money plaintiff lost was paid to Thomas and put in a drawer belonging to defendant. It is admitted the place where the gambling was done was the place of business of defendant; that the wheel on which the game was played and all the furniture and other paraphernalia belonged to him. And Thomas, when asked on cross examination, in whose name the business was being run, said, that he did not know whether there was any name attached to it; that there hardly ever is, that nobody is anxious to assume it; that the contract between defendant and himself was that Shaw was to furnish the room, lights and the money to back the games with; that he should take the place, manage it, and divide the proceeds. He says he was supposed to handle the money, that Shaw was incompetent to run the gambling room. But the evidence shows that a night or two after plaintiff lost his money Shaw was himself in charge of the wheel, when de-

fendant lost to plaintiff between two hundred and fifty and three hundred dollars, and gave to plaintiff his check on a bank for $246.75 part thereof, but on which he stopped payment before the check could be presented for payment. True it is defendant undertakes to explain his management of the wheel on this particular night by saying that in the absence of Thomas plaintiff persuaded him to open the wheel. But plaintiff denies this. Both defendant and Thomas admit that they were to share in the profits. This being so plaintiff lost his money as much to defendant as he did to Thomas. By the terms of their agreement they both must have shared in the money which plaintiff lost, and whether we treat them as co-partners or as standing in the relation of principal and agent the law makes them joint tort feasors and liable either jointly or severally to plaintiff. *Preston* v. *Hutchinson,* 29 Vt. 144; *Johnson* v. *Chapman,* 43 W. Va. 639; 20 Cyc. 959. In 1 Page on Contracts, 839, it is said: "If the wager is illegal as well as void, the agent cannot recover for services or advances, since, properly speaking, there is no agency in illegal acts but all are joint wrong doers". While these authorities make Shaw and Thomas joint conspirators or joint tort feasors and liable jointly, they also make them liable severally, and each are liable we think under the statute.

But in the answer of the defendant he seeks a cross recovery against plaintiff for $40.00 alleged to have been lost by him to plaintiff on the night he operated the wheel. Plaintiff in his reply thereto denies this, and his counsel contends that no such right is available in this suit. Why not? If he has made out a case against plaintiff by proof the Kentucky case of *McKinney* v. *Pope's Adm'r., supra,* is direct authority that a defendant may recover on a cross bill for money lost to plaintiff. Section 3855, Code 1906, we think gives him the same right by a cross answer.

But has the defendant made out by proof a case for cross relief? He testifies that he paid this money to plaintiff through Thomas the night he gave plaintiff his check for $246.75. Plaintiff admits that the defendant paid him $40.00 at that time, but says positively that this was money he had paid defendant for checks. Shaw claims the $40.00 lost by him to plaintiff was covered by $100.00, paid by him at the time through Thomas to plaintiff's brother; and Thomas says, that

the way he came to pay the brother was that he had checks to cash in calling for $100.00. He says, moreover, that the plaintiff and his brother were betting together. But whether these checks represent winnings or part winnings and part money paid in for checks is not clear. If plaintiff and his brother were playing together and the $40.00 represented winnings we think both would be liable to defendant upon the principles already announced. Both would then be joint tort feasors. But plaintiff positively swears that the $40.00 he got personally was the amount he had paid for checks. He admits that he furnished some checks to his brother but he thinks his brother lost some money before he went into the game. In as much as Thomas gave the $100.00 to plaintiff's brother and in as much as he declared the game off as having been played unfairly and defendant stopped payment on his check the evidence as a whole supports the claim of the plaintiff rather than that of defendant, that the plaintiff got back only the money he had actually paid for checks, and that the money paid him and his brother did not represent losses of defendant to them. As the burden was on defendant to make out his case by a clear preponderance of the evidence we find the fact against him on this issue.

We are therefore of opinion upon the whole case to reverse the judgment below and to pronounce the decree here which we think the intermediate court should have pronounced, that the plaintiff recover of the defendant the sum of $388.80, being the principal sum lost with interest to the date of the judgment appealed from, with interest thereon from the 28th day of November, 1906, the date of said decree together with his costs by him in this Court and in the intermediate court in this behalf expended.

*Reversed, and Judgment rendered for Plaintiff.*