## Louisville & Nashville Railroad Company v. Hall.

(Decided April 26, 1927.)

### Appeal from Perry Circuit Court.

1. Limitation of Actions.—Action against railroad for damages for mutilating corpse through negligence in dropping box and casket held clearly "action on contract," not barred by one-year statute of limitations (Ky. Stats., section 2516) applicable to action in tort.

2. Carriers.—In widow's action on contract against railroad for damages for mutilation of dead body of daughter through negligent dropping of box and casket, defendant held not entitled to peremptory instruction on ground that plaintiff, whose son bought tickets for entire family and the corpse, did not make the contract and had no right of action.

3. Contracts.—A party is not liable for negligence in relation to a contract to a third person with whom he has no contractual relation.

4. Carriers.—Where widow, suing for railroad's negligent mutilation of dead body of daughter through negligent dropping of casket, testified to mental suffering occasioned by splotched and disarranged appearance of corpse, held, that she was not barred from recovery by fact that she was not told before interment that corpse had been dropped.

5. Carriers.—$500.00 damages for railroad's mutilation of corpse from negligent dropping of box and casket held not excessive.

6. Appeal and Error.—In widow's action against railroad for damages for mutilation of daughter's corpse through negligent dropping of box and casket, admission of testimony of plaintiff's son that he did not tell his mother about the accident until six weeks after the occurrence held not prejudicial to defendant.

7. Dead Bodies.—There is no property right to a dead body in a commercial sense, though the right to bury a dead body will be recognized and protected by the courts.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, JESSE MORGAN and C. S. LANDRUM for appellant.

WILSON & WILSON for appellee.

Opinion of the Court by Judge Logan—Affirming.

This suit was instituted in the Perry circuit court in the name of Biscomb Hall, Mart Hall, and Daisy Jones to recover damages for the mutilation of the dead body of their little sister, Deliah Hall. She died at a point near Bulan, Ky., and it was alleged that they bought a ticket for themselves and the corpse from Bulan to Hazard; that in changing trains at Hazard the employees of the defendant at its depot, through their negligence, dropped the box and casket containing the body, or allowed it to fall from a truck onto the railroad track, and mutilated the body and the casket, and as a result they suffered great mental anguish.

A special demurrer was filed by the defendant, which was sustained on the ground that the plaintiffs did not have any right of action. Thereafter an amended petition was filed, in which Rebecca Hall, the mother of Deliah Hall, was made a party plaintiff. This amendment contains substantially the same allegations as are found in the original petition. It sets out, however, that the father of Deliah Hall was dead, and that Biscomb Hall was his oldest son, and had supported the family, including Deliah Hall. It is then alleged that the plaintiffs —that is, Biscomb Hall and Rebecca Hall, the mother— bought tickets at Bulan for transportation of the family and the corpse to Hazard, and that at Hazard tickets were purchased to Pleasant View, the point of destination. A special demurrer was filed to the petition as amended, on the grounds that neither of the plaintiffs had capacity to sue, whereupon the plaintiffs dismissed the action in so far as Biscomb Hall was concerned, and requested that his name be stricken from the proceedings, and that the action be allowed to proceed in the name of Rebecca Hall. Demurrers to the petition as amended were overruled, and the defendant filed its answer, in which it denies the allegations of the petition, and pleads affirmatively that the plaintiff, Rebecca Hall, was not present at Hazard,

and did not accompany the body to Pleasant View, and did not make the contract with the agent of defendant at Hazard for the transportation of the body; that the action is barred by limitation, because the alleged mutilation of the body took place on the 8th day of September, 1920, and the petition was not filed until the 2nd day of December, 1921. A second amended petition was filed, which contains no material allegation not found in the original petition and the first amended petition. It is sought in the second amended petition to show that the action is a suit on a contract. The case was tried at the April term, 1926, of the Perry circuit court, and resulted in a verdict in favor of plaintiff in the sum of $500. A number of grounds are set up in the motion for a new trial, and we shall consider such as are deemed of importance.

It is insisted that the action cannot be maintained in tort and the plea of limitations should have been sustained. Clearly this is an action on a contract, and the one-year statute of limitations (Ky. Statutes, section 2516) has no application.

It is next insisted that, if the action sounds in contract, a peremptory instruction should have been given for appellant on the ground that the appellee did not make the contract with appellant which was breached, and, as the plaintiff did not make the contract, she has no right of action. It is urged that the evidence conclusively shows that the contract was made by her son, Biscomb Hall, and not by appellee. It is the law that a party is not liable to a third person who has no contractual relation with such party for negligence in relation to the contract.

The case of Osheroff v. Rhodes-Burford Company, 203 Ky. 408, 262 S. W. 583, is relied on by appellant. In that case the wife sought to recover on a contract made by the seller of a porch swing. The court held that, as Mrs. Osheroff was not a party to the contract, she could not recover. The case of Bensinger Outfitting Co. v. Seaman's Admr., 213 Ky. 157, 280 S. W. 941 is also relied on. In that case it was held that the wife of a purchaser of a stove could not recover from the seller for the negligent installation of the stove, as there was no evidence that the stove was inherently or imminently dangerous. The case of Nichols v. Eddy (Tex. Civ. App.), 24 S. W. 316, is relied on by appellant. In that case the mother sued the carrier to recover for not see-

ing her dead child before burial, because of the decomposition of the body due to negligent delay in the transportation of the corpse from the place of death to the place of burial. The contract for the transportation in that case does not appear to have been made by any member of the family of the dead person, and the carrier had no knowledge that the mother of the dead person was in any way interested in the transportation of the corpse.

It is necessary to examine the evidence in this case to see whether it falls within the law announced in the cases relied on by appellant. The appellee testified that her daughter, Deliah, died on the 7th day of September, and that she was the youngest child, and about seven years old at the time of her death. Appellee prepared the corpse for burial, and it was necessary, in order to bury the body at the family graveyard in Pleasant View, that it be transported over the lines of defendant. The body was embalmed, and was in good condition at the time it was deliverd to defendant. It was delivered to defendant at Bulan, and was carried to Hazard. Appellee testified that she left the making of the arrangements for the transportation of the body to her son, Biscomb. The family—that is, the mother and children—left on the train with the corpse for Hazard. The mother was not present at the time of the accident, and did not see the corpse any more until it reached Pleasant View. Her testimony shows that the body was splotched and showed evidence of rough handling, and that the casket was injured at least to some extent. The natural appearance of the corpse was marred. The appellee testified that she suffered greatly in mind as a result of the condition of the corpse, although it was several weeks thereafter before she learned the cause of that condition.

Biscomb Hall testified for appellee. He was a single man at the time he testified, and looked after making all necessary arrangements for the transportation of the corpse and for the funeral. When the family arrived at Hazard the corpse was taken from the train and placed in the baggage room on one of the trucks of the railroad. He testified that he bought the tickets at Hazard for the family and for the transportation of the corpse. The ticket for the corpse was given to the baggage man at the depot in Hazard. He testified that the man who was handling the truck wheeled it around and turned the casket off with the face towards the ground. It fell off of the truck onto the platform in front of the depot. The

man who was moving the truck was a colored man, whom the witness had seen in the baggage room handling baggage. When the corpse fell off of the truck, the colored man appears to have deserted the scene, and Biscomb Hall and others present picked up the casket and placed it on the train. He also testified that the corpse was mutilated when the casket was opened at Pleasant View. He describes it as being all spotted, and states that it had been disarranged in the casket. He testified that he did not inform his mother of the accident at Hazard until six weeks after the funeral. He gives as a reason for his failure to tell her that she was sick, and he feared that the information might make her worse. The undertaker testified as to the preparation of the body for burial, and stated that the corpse was in good condition when it was delivered to the defendant, and that it should have been in good condition at the time it reached Pleasant View. Other members of the family testified as to the accident at Hazard, to the same effect substantially as the testimony given by Biscomb Hall  The defendant introduced no evidence.

It appears to us that Biscomb Hall, as is stated by his mother, was making all arrangements for the transportation of the corpse and for the funeral, and that she left all matters to him, and for that reason he was acting for her, and the contract was for her benefit. It would be a strained construction indeed to hold that the mother is not entitled to the benefit of the contract, because she left the making of the contract in this case to the son, who made all arrangements for the entire family. The mother accompanied the corpse on the train, and while she did not see the accident, the effect of the accident operated on her mind to the same degree as if she had seen it when it happened. She discovered the condition of the corpse when the casket was opened at Pleasant View, and if she suffered mental anguish as the result of the condition the fact that she did not know the cause of it did not in any way reduce the extent of her suffering. She learned later that the mutilation was caused by the carelessness of defendant, and she was within her rights in maintaining this action, and if there are no errors appearing in the record the case will have to be affirmed.

The appellant in its brief seems to take the position that there can be no recovery, because appellee did not know of the mutilation of the corpse at or before

the interment, and that because she had no such knowledge she cannot recover. We do not so read the record. As we understand her testimony, she was present and saw the corpse before the interment.

It is insisted that the damages are excessive, because exemplary or punitive damages cannot be allowed in such cases, unless there was a wanton and willful breach of duty on the part of the carrier. Be that as it may, the proof shows that the negligent handling of the truck at Hazard was the cause of the accident, and this is not disputed by any witness. There can be no fixed rule as to the amount of recovery in such cases. In this case the dead child was the baby, and the mother had taken great care in the preparation of the corpse for burial. When it reached the place of burial, the corpse was disfigured and the casket injured, and this clearly was a result of negligence on the part of the servants of the defendant. The award by the jury of $500.00 seems large, and yet we are not prepared to say that it was excessive, and for that reason this ground urged for reversal cannot be sustained.

It is urged that the evidence of Biscomb Hall that he told his mother about the accident six weeks after the occurrence was incompetent. We cannot agree with this contention, and we fail to see how appellant could have been prejudiced by the evidence in any event. The testimony went no further than the statement of the witness that he informed her of the accident six weeks after it happened.

The criticism of the instructions made by appellant are not justified. The instructions confined the recovery to mental suffering caused by the mutilation of the body as the result of the accident, which happened by reason of the negligence of the defendant. As was held in the case of Seaton v. Com'lth, 149 Ky. 498, 149 S. W. 871, 42 L. R. A. (N. S.) 211, the custom of the country imposed upon appellee the duty of decently burying her child and because of this duty she had the right and the privilege to perform it, and that right is protected by the laws under the decisions in this state. It is true there is no property right to a dead body in a commercial sense, but, as was held in the cases of Neighbors v. Neighbors, 112 Ky. 161, 65 S. W. 607, 23 Ky. Law Rep. 1433, and Hockenhammer v. L. & E. Ry. Co., 74 S. W. 222, 24 Ky. Law Rep. 2383, there is a right to bury a dead body, and the courts will recognize and pro-

tect this right. In this instance the mother, following a natural human instinct, desired to have the body of her child buried decently, and desired to have the corpse in the best condition for the interment that it was possible for it to be, and the law will uphold her rights in these respects.

Having reached the conclusion that appellee was not a stranger to the contract which was made with appellant for the transportation of the corpse, and finding no error in the record which justifies a reversal of this case, it follows that the judgment must be affirmed.