# Fuson v. Commonwealth.

(Decided November 27, 1931.)

CHARLES E. HERD for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—
Affirming.

The appellant, as the coroner of Bell county, was indicted for the offense of malfeasance in office, found guilty, and fined $500. As part of the judgment, it was provided that he should forfeit his office of coroner. He has appealed.

Section 3748 of the Statutes provides that; among other officers therein named, coroners shall be subject to indictment in the county in which they reside for misfeasance or malfeasance in office, and, upon conviction,

shall be fined not less than $100 nor more than $1,000, and that, upon such conviction, the office held by such person shall become vacant and the judgment of conviction shall so recite. Section 528 of the Statutes provides as follows:

"It shall be the duty of the coroner, upon request, or when he has reason to believe a crime has been committed, to hold an inquest upon the body of any person slain, drowned or otherwise suddenly killed. His jury shall be composed of six good housekeepers of the county, summoned and sworn by himself, who upon their oaths, shall inquire, and say, in writing, if they know in what manner the person came to his death, when, where, how and by whom, and who were present, and who are culpable of the act."

As grounds for reversal of the judgment herein, appellant argues that his demurrer to the indictment should have been sustained. That indictment reads as follows:

"The Grand Jurors of Bell County, in the name and by the authority of the Commonwealth of Kentucky, accuse James Fuson of malfeasance in office, committed in manner and form as follows:

'The said James Fuson, in the county and state aforesaid, on the 20th day of November, 1930, and before the finding of the indictment in this case, he then and there being the duly elected and qualified and acting coroner of the said Bell County, Kentucky, did knowingly, wrongfully, corruptly and feloniously and by pre-arrangement and without request, and at a time when he did not have reasonable grounds to believe a crime had been committed, and at a time when he knew that the body hereinafter named had not been slain, drowned or otherwise suddenly killed, go upon the premises where said body was located and there attempt and did hold an inquest over the body of J. E. Candy, who had died a natural death and was at the time of the inquest in Bell county, in the said Bell county, Kentucky, and in said attempt to hold said inquest did threaten to stop the funeral and to stop the persons in charge of said body from proceeding to take care of said dead body and that said acts were done as

above set out against the statutes in such cases made and provided and against the peace and dignity of of the Commonwealth of Kentucky.' ''

It is argued that the indictment in its accusatory part accuses the appellant of the offense of malfeasance in office, but in the descriptive part discloses the offense of misfeasance in office. Mr. Roberson in his new Kentucky Criminal Law and Procedure (2d Ed.), sec. 1535, defines malfeasance as follows:

"Malfeasance in office is defined to be the wrongful or unjust doing of some act which the doer has no right to perform or which he has stipulated by contract not to do. In other words, it is the doing of an act wholly wrongfully and unlawfully.

Misfeasance is defined by the same author thus:

"Misfeasance in office is the improper or wrongful doing of an official act. The performance of an act which might lawfully be done in an improper manner.''

The descriptive part of the indictment under which appellant was tried in substance states that the appellant held an inquest knowingly, wrongfully, corruptly, and feloniously when and under such circumstances as that he had no right under the Statutes to hold such an inquest. If this be true, appellant had committed the offense of malfeasance in office, in that he had done an act which he had no right to perform. The demurrer to the indictment was properly overruled.

It is next contended that the court erred in refusing to grant the apppellant a continuance. The appellant was indicted on November 20, 1930, and he was arraigned on the next day. He filed his demrurer to the indictment on December 3 following, at which time the demurrer was overruled. His case was set for trial, and was tried on March 9, 1931. The record recites that, when the case was called for trial, the appellant announced, "not ready, but made no showing of any kind." The bill of exceptions which is in the narrative form states that the appellant based his motion for a continuance on the ground that he had not employed counsel until that morning, but, to quote, "it did not appear to the court that the defendant (appellant) ever had employed or made any arrange-

ments for a lawyer and did not show any good reason why he should not promptly go to trial." It is obvious in this state of the record that, the appellant having had from November until March to employ counsel, he could not without some showing, which the record says he did not make, secure a continuance because he waited until the morning of the trial to employ an attorney.

It is next contended that the instructions were erroneous. The instructions fully and substantially followed the indictment and the Statutes, and we find no prejudicial error in them.

It is lastly contended that the evidence does not sustain the verdict. It is very meagerly reported in a narrative form of the bill of exceptions; it is there shown that Joe D. Candy, a conductor in the employ of the Louisville & Nashville Railroad, was suddenly stricken as his train pulled into Pineville with what the people at the station thought was acute indigestion, but what really was heart trouble. He was removed to a hospital, where he shortly died. Later the body was taken to the funeral parlors in Middlesboro. It was shown that Candy had not been slain, drowned, or otherwise killed, and that there was no reason to believe that a crime had been committed. It was further shown that no request had been made of the appellant to hold any inquest, and that it had been held by him against the will and consent of the family of the deceased. It is further shown by the witness Price that, before this inquest had been held, he told the appellant all about Mr. Candy being taken suddenly ill on the train, and that it was caused by acute indigestion, and further that he told Mr. Fuson that Candy had died a natural death and had been waited on by Dr. Foley. Dr. Foley testified that he had waited upon Candy from the time he was stricken until he died, and that Candy's death was due to heart failure; that Fuson that night called him up and told him that he was going to hold an inquest, and that he told Fuson that there was no reason to hold an inquest, as Candy had died a natural death, and that there was no reason at all to even suspect that Candy had received any injury or died any way except from natural causes. It was further shown that Fuson acted in a very high-handed way in the funeral parlors at the time he held the inquest, and by the witness Minton that the police had to be called in an effort to control the appellant. Fuson himself

admits getting in touch with Price and learning from him what Price testified he had told appellant. Fuson also admits that he called up Dr. Foley before the inquest and was informed about the cause of Candy's death. Fuson did not testify to any fact or rumor that would give him any ground or reason to believe that Candy had received any injury or died from any unnatural cause. It is obvious from this resume of the evidence that the jury was fully warranted in believing that Fuson held this inquest at a time when he had no right to do so, and when he knew he had no right to do so. The judgment is affirmed.

Whole court siting.