## Streipe v. Liberty Mutual Life Insurance Company et al.

(Decided February 16, 1932.)

16

W. G. DEARING and T. A. LUMAN for appellant.

ROBERT F. VAUGHAN and FRED FORCHT for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming in part and reversing in part.

Frances Streipe, the widow of Henry C. Streipe, instituted an action to recover damages for the unlawful mutilation and dissection of the body of her deceased husband. The defendants were the coroner of Jefferson county, a physician who performed an autopsy at the instance of the coroner, two other physicians who observed the autopsy on behalf of an insurance company, the insurance company itself, and an undertaker to whom the body was intrusted for burial. The petition charged a conspiracy on the part of the defendants to perform an unlawful autopsy upon the body of plaintiff's deceased husband, without her knowledge or consent, and

alleged that the wrong was fully accomplished, because of which she sought to recover substantial damages. The trial court gave a peremptory instruction in favor of the defendants, except the coroner, against whom the jury returned a verdict for $4,500. The coroner has not appealed from the judgment against him. The undertaker was dropped as a defendant, and the present appeal is by the plaintiff to procure a new trial as against the insurance company, the physician who conducted the autopsy, and the two physicians who stood by while the autopsy was being performed. The question to be determined is the right of the plaintiff to have the case submitted to the jury as against the insurance company and the three doctors. The solution of the problem depends upon whether there was any evidence tending to sustain the cause of action upon which the plaintiff relied for a recovery. In passing upon the propriety of a peremptory instruction, it is the practice of this court to take that view of the evidence, and the inferences reasonably deducible therefrom, most favorable to the plaintiff. Terrell v. Southern Ry. Co., 225 Ky. 645, 9 S. W. (2d) 993; Stanley's Admr. v. Duvin Coal Co., 237 Ky. 820, 36 S. W. (2d) 630.

Henry C. Streipe was employed by Hubbuch Brothers & Wellendorf, who were operating under the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987), and the Liberty Mutual Insurance Company was the insurance carrier. On May 29, 1928, while engaged for his employer in hanging awnings on second story windows, Streipe fell from a ladder to the ground and sustained a personal injury. He was picked up by the police patrol and carried to the city hospital, but died on the journey. His visible injury consisted of a broken leg. The body was sent to an undertaker to be prepared for burial. Dr. Roy S. Carter, the coroner of the county, caused an autopsy to be held by Dr. W. S. Carter. Dr. Wilbur Helmus and Dr. E. C. Withrespoon attended the autopsy as observers for the insurance company. The agent of the insurance company was in touch with the coroner's office and desired that an autopsy be held. The tendency of the evidence will be discussed later in this opinion.

Since the opinion of the Supreme Court of Minnesota, in the case of Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370, where Judge Mitchell gave exhaustive consideration to the sub-

ject, it has been regarded as the settled law of this country that, for the purpose of preservation and sepulture, a surviving spouse, or next of kin, in the absence of a different disposition by will, has the right to possession of the dead body, which the law will recognize and protect from unlawful invasion by awarding damages for injury to the feelings resulting from any wrongful mutilation or mishandling of the corpse. 8 R. C. L., sec. 18, p. 695; 17 C. J., sec. 16, p. 1143; Burney v. Children's Hospital, 169 Mass. 57, 47 N. E. 401, 38 L. R. A. 413, 61 Am. St. Rep. 273; Darcy v. Presbyterian Hospital, 202 N. Y. 259, 95 N. E. 695, Ann. Cas. 1912D, 1238; Hill v. Travelers' Ins. Co., 154 Tenn. 295, 294 S. W. 1097, 52 A. L. R. 1442; Meyers v. Clarke & Duddenhauser, 122 Ky. 866, 90 S. W. 1049, 93 S. W. 43, 28 Ky. Law Rep. 1000, 29 Ky. Law Rep. 393, 5 L. R. A. (N. S.) 727; Hockenhammer v. Lex. & East Ry. Co., 74 S. W. 222, 24 Ky. Law Rep. 2383; Louisville & N. R. R. Co. v. Hall, 219 Ky. 528, 293 S. W. 1091; Woods v. Graham, 140 Minn. 16, 167 N. W. 113, L. R. A. 1918D, 403; Long v. Chicago, R. I. & P. R. Co., 15 Okl. 512, 86 P. 289, 6 L. R. A. (N. S.) 883, 6 Ann. Cas. 1005; Floyd v. Atlantic Coast Line, 167 N. C. 55, 83 S. E. 12, L. R. A. 1915B, 519; Keyes v. Konkel, 119 Mich. 550, 78 N. W. 649, 44 L. R. A. 242, 75 Am. St. Rep. 428.

If the autopsy in question was not authorized by the plaintiff, or by some provision of law, it was illegal and wrongful. Meyers v. Carke & Duddenhauser, supra. It is not pretended that the plaintiff authorized or consented to the autopsy, or even that she knew of it, which leaves for consideration the extent of the authority conferred by law upon the coroner. The statute provides:

"It shall be the duty of the coroner, upon request, or when he has reason to believe a crime has been committed, to hold an inquest upon the body of any person slain, drowned or otherwise suddenly killed. His jury shall be composed of six good housekeepers of the county, summoned and sworn by himself, who upon their oaths, shall inquire, and say, in writing, if they know in what manner the person came to his death, when, where, how and by whom, and who were present, and who are culpable of the act." Section 528, Ky. Stat.

When a lawful inquest is being held, and a post mortem examination is deemed necessary, within the

limits and under the circumstances defined by section 532, Ky. Stats., the coroner may cause an autopsy to be held. The function of the coroner is to aid in the administration of the criminal laws of the state. Ætna Life Ins. Co. v. Milward, 118 Ky. 725, 82 S. W. 364, 26 Ky. Law Rep. 589, 68 L. R. A. 285, 4 Am. Cas. 1092. He has no lawful right to conduct an inquest, or to cause an autopsy to be held in the course of an inquest, unless he has reason to believe that a crime has been committed, or unless he has been requested to do so by some one who is authorized to make such a request. An insurance carrier, with merely a private interest to serve, would not come within the purview of that provision. Certainly the rights of the surviving spouse, or the next of kin, to the body of the deceased cannot be subordinated to anything less than an overriding public interest sanctioned by law. In Meyers v. Clarke & Duddenhauser, supra, the defendants were sued for damages for holding an autopsy without the consent of the persons entitled to the custody of the body. They were permitted to rely upon a valid police regulation enacted by the city where the death occurred which authorized an autopsy when necessary to enable the doctors to issue a burial permit. In this case no city ordinance was relied upon, and the sole authority of the coroner for ordering the autopsy was section 528 of the statute above quoted. It is quite clear that the statute conferred upon the coroner no authority to order an autopsy in a case like the present one. Cf. Fuson v. Com., 241 Ky. 481, 44 S. W. (2d) 578. Since the autopsy was wholly unauthorized and illegal the coroner, and all persons who assisted, advised, aided, abetted, incited, commanded, countenanced, or co-operated in conducting the autopsy, or who approved of it after it was done, if it was done for their benefit, were liable to the plaintiff for the damages suffered by her as a consequence of the wrongful act. Moore v. Rogers, 51 N. C. 297; Wamsganz v. Wolff, 86 Mo. App. 205; Moir v. Hopkins, 16 Ill. 313, 63 Am. Dec. 312; Mack v. Kelsey, 61 Vt. 399, 17 A. 780; Pirtle's Admx. v. Hargis Bank & Trust Co., 241 Ky. 455, 44 S. W. (2d) 541; 26 R. C. L., sec. 15, p. 766; 5 C. J., p. 626, sec. 13; 38 Cyc. 485, 486.

The trial court was of the opinion that the doctor employed by the coroner to conduct the autopsy could not be held liable for his acts, and cited in support of that view the case of Hassard v. Lehane, 150 App. Div. 685, 135 N. Y. S. 711, 713. It is true that a physician who

performs an autopsy at the request of the coroner is not liable for damages if the order of the officer was authorized and valid. In the case cited the statutes of New York (Penal Law [Consol. Laws, c. 40], sec. 2213) authorized an autopsy upon the body of any person who should die ''from criminal violence, or by a casualty, or suddenly when in apparent health, or when unattended by a physician, or in prison, or in any suspicious or unusual manner.'' It was held that the circumstances appearing justified the coroner, and the order of the coroner, in such circumstances, protected the doctor employed by him. Cf. Young v. College of Physicians & Surgeons, 81 Md. 358, 32 A. 177, 31 L. R. A. 540. But an invalid or unauthorized order of the coroner is no protection to the physician who performs the autopsy. If the coroner acts wrongfully, and without lawful justification, his employee who perpetrates or participates in the unlawful act is equally liable for the consequences. It is a familiar principle that an officer is protected in the execution of valid process, but, when the process itself is invalid, it affords no protection, the officer being treated as a trespasser from the beginning. Pepper v. Mayes, 81 Ky. 673; Reed v. Rice, 2 J. J. Marsh. 44, 19 Am. Dec. 122; Stephens v. Wilson, 115 Ky. 27, 72 S. W. 336, 24 Ky. Law Rep. 1832; Perkins v. Ogilvie, 140 Ky. 412, 131 S. W. 200; Davis v. Gott, 130 Ky. 486, 113 S. W. 826.

So when the coroner exceeds his authority, or acts without authority, his order or request affords no protection to a surgeon who actually performs an illegal autopsy. ''Every person must be amenable to the authority under which he essays to act.'' Penhallow v. Doane's Admr., 3 Dall. 54, 1 L. Ed. 507. It follows that the case against Dr. W. S. Carter stood on a parity with that against the coroner and should have been submitted to the jury. Palenzke v. Bruning, 98 Ill. App. 644:

''The capacity in which a tort-feasor acts, whether as agent, trustee, servant, or public officer, does not protect him from liability for his torts.'' Warder-Bushnell & Glessner Co. v. Harris, 81 Iowa 153, 46 N. W. 859; Ryan v. Quinn, 71 S. W. 872, 24 Ky. Law Rep. 1513; Hilmes v. Stroebel, 59 Wis. 76, 17 N. W. 539; Berns v. Shaw, 65 W. Va. 667, 64 S. E. 930. 23 L. R. A. (N. S.) 522.

One cannot escape the consequences of a criminal or wrongful act done by him on the ground that it was an official act, or directed by another who had no right himself to perform such act. Milbrath v. State, 138 Wis. 354, 120 N. W. 252, 131 Am. St. Rep. 1012; Pirtle's Admx. v. Hargis Bank & Trust Co., 241 Ky. 455, 44 S. W. (2d) 541; Mayer v. Thompson-Hutchison Building Co., 104 Ala. 611, 16 So. 620, 28 L. R. A. 433, 53 Am. St. Rep. 88; Cameron v. Kenyon-Connell Commercial Co., 22 Mont. 312, 56 P. 358, 44 L. R. A. 508, 74 Am. St. Rep. 602.

But the case against Dr. Helmus and Dr. Witherspoon falls in a different category All that was done by them was to observe the operation by Dr. W. S. Carter. Neither of them aided or assisted or participated in any manner in the actual autopsy. One of them appeared upon the invitation of the other who attended at the request of the insurance company. They had a right to assume from appearances, in the absence of anything to put them on inquiry, that the autopsy was a lawful and proper one. For aught that appears they may have thought that the consent of the plaintiff had been obtained. It does not appear from the evidence that they had any knowledge that they were witnessing an unauthorized and illegal autopsy.

The mere presence of a person at the scene of a wrongful act committed by another, but without encouragement or incitement to the wrongdoer, is not enough to render such person liable. 5 C. J., sec. 13, p. 627; 38 Cyc. 485; Ryan v. Quinn, 71 S. W. 872, 24 Ky. Law Rep. 1513; Brown v. Perkins, 1 Allen (Mass.) 89; Hilmes v. Stroebel, 59 Wis. 74, 17 N. W. 539; Fitzwater v. Fassett, 199 Pa. 442, 49 A. 310.

We are thus brought to a consideration of the case against the Liberty Mutual Insurance Company. The evidence tended to show that its agent learned of the accident to Henry C. Streipe, whose employer was operating under the compensation act. It was confronted with a potential liability because of the death of Streipe, if it resulted from the accident. It had a motive for obtaining an autopsy. If it could establish that the death of Streipe resulted from disease, and not from traumatic injury arising out of and in the course of his employment, it would be relieved of a substantial liability. The agent got in touch with the coroner, events moved with celerity, and the coroner proceeded to have an immediate autopsy. The plaintiff was not consulted or advised of

the purpose. Her rights were not respected. The answer of the insurance company affirmatively alleged that it "called the coroner and asked him to hold an inquest on the body and if necessary to do so to cause an autopsy to be held in order that the truth might be discovered." The answer was later withdrawn, but it constituted competent evidence in the case notwithstanding that fact. Wyles v. Berry, 116 Ky. 377, 76 S. W. 126, 25 Ky. Law Rep. 606; Palmer Transfer Co. v. Eaves, 85 S. W. 750, 27 Ky. Law Rep. 573; Pope v. Allis, 115 U. S. 363, 6 S. Ct. 69, 29 L. Ed. 393; Delaware County v. Diebold, Etc., 133 U. S. 473, 10 S. Ct. 399, 33 L. Ed. 674.

The insurance company paid Dr. W. S. Carter $50 for his part in assisting it in the transaction. It admits the fact of this payment, but explains that it covered the cost of a copy of his report to the coroner. But the autopsy, including the report to the coroner, cost only $10, which was paid by the city, and the price paid for a copy obtainable at slight cost would suggest other legitimate inferences that the jury might derive from the facts and circumstances. It greatly desired the autopsy to be held, it was made solely for its benefit, and it frankly approved of all that was done. When Mrs. Streipe filed a claim for compensation before the Workmen's Compensation Board, the insurance carrier was enabled to defeat the claim by the production of the facts gathered at the autopsy. Streipe v. Hubbuch Bros. & Wellendorf, 233 Ky. 194, 25 S. W. (2d) 358, 359.

The circumstances proven, and the inferences fairly to be deduced from all the evidence, warranted a submission of the case to the jury as against the insurance company, as well as the coroner and his employed surgeon who conducted the autopsy.

We do not overlook that Dr. Roy S. Carter, the coroner, accepted full responsibility for the wrong and sought to exonerate the other parties. But the jury may have disbelieved him, and it was not required to accept at its face the self-sacrificing conduct of the coroner which was not consistent with the facts and circumstances developed by the evidence as a whole.

The conspiracy charged against the participants in the wrong need not be proven by direct evidence of an agreement among the wrongdoers. The ultimate fact may be derived from the circumstances, and concert of action toward a desired end constitutes cogent evidence

of a previous understanding to effect such object. Addison v. Wilson, 238 Ky. 143, 37 S. W. (2d) 7.

It follows that the trial court was correct in directing a verdict for Dr. Helmus and Dr. Witherspoon, but it committed an error in its ruling in favor of Dr. W. S. Carter and the Liberty Mutual Insurance Company. As to them the case should be submitted to the jury.

The judgment is affirmed as to Drs. Helmus and Witherspoon, and reversed as to the Liberty Mutual Insurance Company and Dr. W. S. Carter for a new trial not inconsistent with this opinion.