## Seaton v. Commonwealth.

(Decided September 26, 1912.)

### Appeal from McCracken Circuit Court.

1. Criminal Law—Dead Bodies—Disposition of.—In the absence of a statute or testamentary disposition, the burial of the dead devolves upon the father or next of kin, who must shroud the corpse to avoid exposure, enclose it in a case and deposit it in a tomb, in respect to all which his choice is subject to no regulation, save that he shall refrain from all acts or omissions as would amount to a nuisance. Hence, a father, who placed the body of his deceased infant in a paper box, enclosed it in a rude wooden box and interred it in a grave two feet deep, in a woods lot on his farm, was guilty of no public offense.

2. Criminal Law—Customs and Usages—Mortuary Ceremonies.—Ceremonies at the interment of the dead, the performance of which being enjoined and prescribed by religious societies, fraternal and other organizations, are of infinite variety as to form, and lack the essential element of uniformity to make them binding and obligatory as customs, even if their compulsory observance was not constitutionally objectionable. A father, therefore, vio-

lated no law, who refused to permit or failed to provide for cere-
monies at the interment of his deceased child.

M. E. GILBERT for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Assistant
Attorney General for appellee.

Opinion of the Court by Judge Lassing—Reversing.

Dolph Seaton was indicted by the grand jury of Mc-
Cracken County for failing to provide a Christian burial
for his deceased infant child. A demurrer to the in-
dictment having been  overruled, he entered a plea of
"not guilty," and upon trial before a jury he was fined
$150.00. To reverse the judgment predicated thereon,
he prosecutes this appeal.

The evidence discloses the following facts: The child
was prematurely born and lived only about two weeks.
Upon the evening of its death, appellant went to  the
house of a neighbor, John Bobo,.and notified him that
the child was dead. Thereupon, Bobo and his wife went
to appellant's house and sat up with the corpse that
night. On the following morning, Bobo suggested that
appellant take the necessary steps to procure a burial
permit. This appellant declined to do, claiming that it
was unnecessary, and that he did not propose going to
any expense whatever on account of the burial. At Bo-
bo's suggestion, he procured the services  of  another
neighbor, John Doyle, to assist in digging the  grave.
While Bobo was gone for Doyle, appellant took some
pieces of rough board, made a rude box, took it to  a
point in a woods lot on his farm, which he said was a
suitable place for the grave. At this place selected by
appellant, Bobo and Doyle dug the grave about two feet
deep. Appellant, in the meantime, brought the corpse
from the house in a small paper box, to where the grave
was being dug, placed it upon the ground, and assisted
in digging the grave. When the grave was completed,
the wooden box was lowered in it, the paper  box with
the corpse placed therein, the lid put on, and the grave
filled to a level with the surrounding ground, appellant
assisting in this work by tramping the dirt as it was be-
ing put back into the grave. After the grave had been
filled, he requested Bobo and Doyle to rake the leaves
back over the place where the grave was, so as to con-

ceal, as far as possible, the identity of the grave, though Doyle says he placed a stake at or near the grave to mark it. The evidence further shows that appellant declined to send for his wife's mother, and stated that he did not want any of his relatives notified. No services of any kind was held at the grave. The child was clothed before being put into the box, but as to the character of the clothing the evidence is silent. Appellant offered to testify upon this point, but the Commonwealth objected, and the evidence was not introduced. The evidence further shows that appellant gave, as a reason for wanting the identity of the grave concealed, that if his wife knew where it was, she would weep and grieve over it. Although appellant was a poor man, he was financially able to have bought a coffin for the child, had he desired to do so; it is also shown that he had lumber at and around his home, out of which he could have made a better and more presentable box than that in which he buried the child, but he said that he did not propose using his good lumber for this purpose.

Upon this state of facts, it is insisted by counsel for appellant that the trial court should either have sustained the demurrer to the indictment, or else have dismissed the proceeding at the conclusion of the evidence. It is urged for the Commonwealth: First, that the judgment should be upheld because appellant caused this child to be buried in a woods lot rather than in a cemetery, or in some place which would be by the neighborhood regarded as a suitable place for the burial of one's dead; second, that he should be punished for failing and refusing to provide a better box or coffin, in which to bury the child; and third, that the penalty should be imposed because of his failure to have the burial attended with appropriate or any ceremonies whatever.

The question is a new one in this court. Disputes have frequently arisen between relatives and friends over the right to select the last resting place of the bodies of their dead, but we have not heretofore been called upon to pass upon a question of the character here presented. There is no statute upon the subject. We must look to the common law to determine whether the acts of appellant are such as may be punished.

In the case of Neighbors v. Neighbors, 112 Ky., 161, the question was raised as to the right of the widow and children to have the body of their deceased husband and

father removed from one burying ground to another nearer their home. Their right to do this was resisted by the brothers and sisters of the deceased. Upon consideration here, it was held:

"There is not a property right to a dead body in a commercial sense, but there is a right to bury it which the courts of law will recognize and protect. This right embraces the right to select the place of burial and to change it at pleasure. This right, in the absence of testamentary disposition of the body, belongs to the next of kin."

Hence, under the rule announced in that case, it was the right of appellant to select the place where his child should be buried, and he violated no law or duty which he owed to the Commonwealth or to the public, in selecting a spot in his woods lot, rather than in some public cemetery or private burying ground.

This brings us to a consideration of the second charge in the indictment, to-wit: that appellant failed and refused to furnish a respectable and proper coffin or casket, in which to bury his child. There is no rule of law defining how a corpse shall be dressed for burial, or the character of coffin or casket in which it shall be enclosed, or the material out of which the box, in which the coffin is to be placed, shall be made, or the depth of the grave. These matters are left, as from the very exigencies of the case they must be, for determination by relatives, friends or persons having the matter in charge. The terms, "decent," "respectable" and "proper" burial, as used in this connection, are necessarily relative terms, varying, of course, with the financial and social standing of the deceased and his relatives, and not infrequently affected by the community and the rules of religious, social or political organizations, of which the deceased may have been a member or with which he was affiliated. What would be regarded as entirely proper and appropriate by one, might be regarded as wholly inadequate and altogether unsuitable by another, and so, no rule governing the case can well be formulated, but, by common consent, a determination of these matters is left exclusively to the relatives or friends of the deceased. The evidence shows that the corpse, in this case, was clothed, and we must presume, properly so. The father chose a practically worthless paper box in which to bury it, rather than go to the expense of pur-

chasing a coffin or having one made. It was satisfactory to him, and, while it no doubt shocked the sense of propriety of his neighbors and the people generally in that locality, if he had a legal right to make a selection, no just ground of complaint is afforded because, in the exercise of that right, he failed to make a selection that would have been, in the minds of his neighbors and friends, regarded as suitable, decent, proper or appropriate.

It is urged that, inasmuch as appellant was able to furnish a coffin, whether manufactured or homemade, in which to bury the child, he should be punished for his failure to do so. This claim is based upon the idea that the coffin must be of some wooden or metallic substance. There is no law so holding, and custom had not so decreed. Webster, in his New International Dictionary, defines coffin to be:

"A chest or case for the reception of a corpse, commonly of wood or metal, though among the ancients stone and pottery coffins occurred. Coffin generally designates the case immediately enclosing the body."

The custom of the country, imposed upon appellant only the duty of decently burying his child. That is, it must be properly clothed when being taken to the place of burial, and then placed in the ground or tomb, so that it will not become offensive or injurious to the lives of others. He may not cast it into the street, or into a running stream, or into a hole in the ground, or make any disposition of it that might be regarded as creating a nuisance, be offensive to the sense of decency, or be injurious to the health of the community. Wynkoop v. Wynkoop, 42 Pa. State, 293, 82 Am. Dec., 506; State v. Kanavan, 1 Maine, 205; Regina v. Vann, 6 British Crown Cases, 324. The good of society prohibits him from so doing. But, since he is left absolutely free to determine the kind of a casket in which the child should be buried, we cannot hold that he should be punished because the selection made by him was not such as his neighbors and the people of the community in which he lived, would have made.

We come next to the question, is appellant subject to punishment because he refused to permit his relatives and those of his wife, or others, to be notified, so that they might be present at the interment? His relatives and friends may have regarded this conduct on

his part as a lack of consideration or respect for their feelings in the matter, but this is the extent of the bearing which his conduct, in this particular, can have upon the case. They had no legal right to be present. They may have been offended, because not notified or invited, but no ground of complaint is afforded to the public on this account. In some localities, funerals are not infrequently attended by invitation. Some are strictly private; while others are open to the public. These are matters which address themselves to the discretion and will of those in interest—the relatives and friends of the deceased.

Lastly, did appellant, in causing the interment to be made without any religious ceremony, render himself liable to punishment? It is usual in this and other civilized communities to have the interment accompanied with some character of religious ceremony; but, there is no law imposing upon those having in charge the burial of the dead, such duty. There being no law requiring this almost universal custom, no just ground of complaint is afforded because appellant failed to observe it. The customs of the country vary so much on the question of ceremonies used in the interment of the dead, that if it were not violative of that provision of the Constitution guaranteeing to every man the right to worship God according to the dictates of his own conscience, it would be utterly impracticable to prescribe a form that would be acceptable to the people generally.

It was no doubt the extreme miserly and niggardly disposition manifested by appellant that aroused the indignation of his neighbors, causing the indictment and ultimately induced the jury to assess the fine against him, which it did. While, by the facts in the record, appellant is shown to be a man utterly lacking in parental instincts, he has kept himself within the pale of the law. At the conclusion of the evidence, the trial judge should have directed a verdict in his favor.

Judgment reversed and cause remanded, with directions to dismiss the proceedings.