E. A. BRADY v. L. M. PRESNELL AND ROSANNA EVIE PRESNELL, HIS WIFE, C. C. CHEEK AND C. A. HAYWORTH.

(Filed 17 May, 1933.)

Mortgages C b—Held: whether mortgage in this case covered sum used to transport deceased's body here for burial was question for jury.

The grantee in a deed executed a contract-mortgage back to his grantor which provided that the grantee should support the grantor's mother, the grantee's mother-in-law, during her lifetime, pay all doctors' bills and provide her body a decent burial at her death, and the contract was made a charge upon the land and the instrument was duly registered. The mother died in Florida and the grantee borrowed a certain sum for the purpose of transporting her body back to North Carolina for burial in the family cemetery. After the burial the grantee obtained from the grantor the exact sum borrowed for the transportation, and repaid the lender, both parties construing the contract to include such transportation. *Held,* the sum was advanced in good faith by the grantor under the contract-mortgage, and the question of the reasonableness of the expenditure and whether the obligation to provide a decent burial reasonably included such transportation should have been submitted to the jury under instructions from the court.

APPEAL by defendant C. C. Cheek, from *Schenck, J.,* at Special January Term, 1933, of RANDOLPH. New trial.

This is an action brought by plaintiff against the defendants Presnells to recover $1,000, with interest from 6 April, 1927, secured by a mortgage to plaintiff of even date, on 68.8 acres of land in Randolph County, N. C., registered in the office of the register of deeds of Randolph County, on 12 April, 1927, subject to a credit of $89.00, 2 December, 1927.

Without setting out the complaint in detail, the facts are indicated in plaintiff's prayer for relief, as follows: "Wherefore, plaintiff asks judgment against L. M. Presnell and Rosanna Evie Presnell for the aforesaid debt, and that the aforesaid mortgage deed be foreclosed and the lands therein described sold and the proceeds thereof applied in discharge of the indebtedness due him by the defendants, L. M. Presnell and Rosanna Evie Presnell, his wife, after first paying off and discharging the sum due the defendant C. C. Cheek as aforesaid ($60.00 and interest from 21 September, 1921), together with any and all taxes that may be outstanding against said property; for such other and further relief as he may be entitled to; and for cost."

The defendants in their answer, without setting same out in detail, say: "Although these defendants do not admit that the plaintiff is entitled to foreclose the mortgage mentioned and described in the complaint

filed in this cause for the purpose expressed in said complaint still, in the event an order of foreclosure is made by the court, defendants pray that the above mentioned $60.00 and interest thereon since 21 September, 1921, and the above mentioned $278.77 and interest thereon from 21 January, 1926, be adjudged and declared to be a first and prior lien on said lands and the money derived from the sale thereof; and that said claims both be paid and satisfied before the said plaintiff or any other person shall receive any sums whatsoever from the sale of said lands, except for taxes, and defendants pray that they be given such other and further relief as they may be entitled to."

The prior contract-mortgage, on the same land, that C. C. Cheek claims under, is dated 21 September, 1921, and made by defendants Presnells to him, and duly recorded in the register of deeds office of Randolph County, N. C., on 22 January, 1925. The pertinent parts of this contract-mortgage are as follows:

"Witnesseth, that whereas, on or about 10 January, 1921, one, Cary R. Cheek, executed and delivered to C. C. Cheek a certain deed of conveyance, whereby she conveyed a tract of land hereinafter described for a term of her natural life, which said deed is recorded in the office of the register of deeds for Randolph County in Book 198, at page 115, for a consideration that the said C. C. Cheek was to support, maintain, care for, pay doctor bills, expenses for the remainder of the life of Cary R. Cheek, *and give her body a decent burial at death.*

And whereas, it is the purpose of C. C. Cheek and Annie Cheek, his wife, to sell said tract of land to L. M. Presnell and Rosanna Presnell for the consideration of one dollar, and the further consideration that the said L. M. Presnell and Rosanna Presnell shall support, maintain, care for, pay doctor bills and pay all expenses during the remainder of the natural life of Cary R. Cheek, *and pay her burial expenses at death.*

And whereas, it is the desire of the said L. M. Presnell and Rosanna Presnell, his wife, to secure the said support, maintenance, doctor bills *and burial expenses to the said C. C. Cheek and save him harmless from said expense* in consideration that they receive a deed from the said C. C. Cheek to the tract of land hereinafter to be described.

And whereas, the said C. C. Cheek has executed a deed to the said L. M. Presnell and Rosanna E. Presnell for the tract of land hereinafter described in consideration of the sum of sixty dollars, paid and expended by the said C. C. Cheek for the benefit and support of the said Cary Cheek. It is the purpose of the said L. M. Presnell and Rosanna E. Presnell, his wife, to secure the said C. C. Cheek for the said sum of sixty dollars by reason of said expenditures. . . .

But this deed is made on this special trust, and that if the said parties of the first part shall well and truly pay to the parties of the second

part, or his legal representatives, *the said sum of sixty dollars as afore-said,* and shall furnish support, maintain, pay doctor bills and all expenses and care for the said Cary R. Cheek for the remainder of her natural life *and give her body a decent burial at their own expenses* then this deed shall be null and void.

But if default shall be made in caring for, supporting, maintaining, paying doctor bills and other expenses for the said Cary Cheek, *or in her burial at death,* then it shall be lawful for and the duty of the said C. C. Cheek, party of the second part, to sell said land hereinbefore described for cash at the courthouse door in Asheboro, N. C., after first advertising said sale by posting notice thereof at the courthouse door and three other public places in said county for thirty days immediately preceding such sale and also publishing said notice for four weeks immediately preceding such sale in a weekly newspaper published in said county and conveying the same to the purchaser in fee simple, *and out of the money arising from said sale to pay said sum of sixty dollars and such other sums the party of the second part has paid by reason of his contract and deed with the said Cary R. Cheek,"* etc.

The only material issue submitted to the jury necessary to be considered on this appeal is as follows: "(2) What amount is due and owing to the defendant C. C. Cheek by the defendants L. M. Presnell and wife, Evie Presnell, by virtue of the mortgage, as alleged in the answer? Answer: $70.00 with interest on $60.00 from 21 September, 1921."

The court below charged the jury as follows: "Therefore, gentlemen of the jury, the court charges you, as a matter of law, that you will answer this second issue $60.00 plus $10.00, $70.00. That you will answer the second issue $70.00 with interest on $60.00 from 23 (21) September, 1921—$70.00 with interest on $60.00 from 23 (21) September, 1921."

The jury answered the issue as instructed by the court below. Judgment was duly rendered on the verdict, and an order of foreclosure, etc. The defendant C. C. Cheek excepted and assigned error to the charge of the court below, and to the judgment as signed, and appealed to the Supreme Court. The necessary facts will be considered in the opinion.

*H. M. Robbins for plaintiff.*
*I. C. Moser for defendant C. C. Cheek.*

CLARKSON, J. Plaintiff rightly contends that the question involved is the interpretation to be placed upon the provisions of the written instrument, a combined contract and mortgage, set forth in the record.

The evidence undisputed is to the effect that Cary R. Cheek had two children involved in the controversy (1) C. C. Cheek and (2) Rosanna Evie Cheek, who married L. M. Presnell. Cary R. Cheek made her home with L. M. Presnell and his wife Rosanna Evie Presnell from the time they gave the mortgage to C. C. Cheek, on 21 September, 1921, until her death on 21 January, 1926, at Okeechobee, Fla. The testimony of L. M. Presnell, in part, is as follows: "I have lived, since 1926, a year and a half in Asheboro. I lived on this farm until I got burned out. . . . She (Cary R. Cheek) was actually living with me at the time this paper was made to Mr. Cheek and she made her home with me from then until the time of her death. I paid her doctor bills and her other expenses during that time, and I supported and maintained her and cared for her during that time. I paid all of her expenses during the balance of her life. She died in my home at Okeechobee, Florida, on 21 January, 1926. . . . I told Cole (his brother-in-law) I wanted the money to pay for the old lady's funeral expenses and he let me have it for that purpose. After that I secured a check from C. C. Cheek for $230.00. It is dated, I notice, 25 January. I received it about this time. It was a day or so after I brought her in from Florida."

C. C. Cheek testified, in part: "The other expense that I paid was a charge for a hearse which was $10.00. . . . My mother died in Florida. Okeechobee was her home at the time she died. She was living down there. I do not happen to know how far it was from where she was buried. I cannot say that it was up towards 1,000 miles. I have never had occasion to estimate the distance. The $25.00 truck charge is for transportation from Aberdeen to Bennett. . . . This place was responsible for what he did. If he did not do it I was to take it up. . . . That check was paid by me. It is the amount of $230.00. The check was introduced in evidence, which reads as follows: 'Bennett, N. C., 25 January, 1926—Pay to the order of L. M. Presnell, $230.00— two hundred thirty dollars—To Peoples Bank and Trust Company, Bennett, N. C.—C. C. Cheek.' (The following was endorsed on the back of the check: 'Pay to E. B. Cole, L. M. Presnell.') Lacy (L. M.) Presnell told me he failed to get it as early as expected. In order to get away he had to make a schedule on train, and that he borrowed it from Edgar (E. B.) Cole and promised to replace it. He told me as soon as the funeral was over he was anxious to get that money back to Edgar and we went over to the office, little office at the planing mill at Bennett. It was just after the funeral. My mother was brought to Bennett and left at my sister's home. The $230.00 was never paid to me."

Edgar (E. B.) Cole was L. M. Presnell's brother-in-law, and no relation to C. C. Cheek. J. A. Purvis testified, in part: "I live at Ben-

nett, N. C. . . . I was cashier of the bank until it closed. . . . Mr. Cheek came to the bank and made arrangements for us to wire the money to L. M. Presnell in Florida. We did actually wire the money."

We think, under the evidence, that the $230.00 was advanced in good faith by C. C. Cheek, under the contract-mortgage and to aid in bringing his mother's body back to the old home burial ground. L. M. Presnell, at the time, did not have the money for the purpose. The temporary obtaining it by L. M. Presnell, under the circumstances, with a corpse to be transported, from his brother-in-law, Edgar (E. B.) Cole, and informing his brother-in-law that he thought he could get it from C. C. Cheek, was not such an obligation to Cole that would defeat Cheek's claim. This he did and returned the exact money (check) to E. B. Cole that he received from C. C. Cheek—$230.00.

The only serious question for us to determine is whether the language in the mortgage "and give her body a decent burial at death" would include the expense of bringing her body to the old home burial ground. Presnell, who owed that obligation to C. C. Cheek never questioned that this was his legal duty, under his contract-mortgage to Cheek. He was unable to finance it and called on Cheek, who did.

Plaintiff quotes Webster as follows: "Burial: The act of burying a deceased person; sepulture; interment; the act of depositing a dead body in the earth, in a tomb or vault, or in the water." Black's Law Dictionary defines burial: "The act of interring the human dead."

It is contended by C. C. Cheek that wherever Cary R. Cheek died, that the contract-mortgage would humanly and naturally contemplate that she would be buried in the old home burial ground, where others near and dear to her sleep, awaiting the resurrection. Presnell so construed the agreement.

We find, on examination of the question: The determination as to how a corpse shall be dressed for burial and the quality of the coffin and the box in which it is to be placed, as well as the depth of the grave, are matters for those who have the burial in charge, so that what is a "decent," "proper," or "respectable" burial will vary with the financial or social standing of the deceased and his relatives, the customs of the community, and the rules of religious, social, and political organizations to which he may have belonged. *Seaton v. Commonwealth,* 149 S. W., 871, 872, 149 Ky., 498, 42 L. R. A. (N. S.), 211.

In 11 R. C. L., part sec. 250, at p. 225, we find: "If a person having an ample estate dies while traveling in a foreign country, there is a legal liability on the part of his estate for services in connection with embalming and transporting his body from the place of death to the place of burial."

In 24 C. J., part sec. 927(4), at p. 308, it is said: "Special circumstances may justify an expenditure unusually great in one or more particulars, as where one dies far from his home or his proper burial place and transportation of the body becomes necessary and proper, or where kindred and friends are summoned from a distance to attend the funeral or accompany the remains from a distant point." *Barbee v. Green,* 92 N. C., 471.

In the ancient day Abraham purchased Machpelah "for a possession of a burying place." Gen. 23:20. Both he and his wife were buried there. Jacob, his grandson, died in Egypt and Joseph and his brethren took his body to Canaan "and buried him in the cave of the field of Machpelah." Gen. 5:13. No legal authorities on the subject have been cited to us in the briefs of the parties. Family burial grounds are everywhere in the State and in more recent times families have plots in cemeteries in the cities and towns. Taking into consideration all the facts and circumstances, what was the contemplation of the parties when the contract-mortgage was executed? The language used in the different places in the mortgage "and give her body a decent burial at death," etc. The usage or custom of the locality or community in relation to such matters; the reasonableness of the amount are for the jury to determine, under proper instructions by the court below.

There can be no question as to the $60.00 with interest from 21 September, 1921. This is conceded. Nor the charge for the hearse $10.00, and the charge of $25.00 truck for transportation of the corpse from Aberdeen to Bennett is also allowable. For the reasons given, there must be a

New trial.